UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RUTGERS CASUALTY INSURANCE COMPANY, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 11-cv-462 |
| v. | ) ) | Judge Edmond E. Chang |
| JOHN P. CALAMOS, SR., Trustee of the Calamos Convertible Opportunities and High Income Fund, et al., | ) ) ) ) | Magistrate Judge Morton Denlow |
| Defendants. | ) | |

**FUND DEFENDANTS' SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF JOINT MOTION TO DISMISS**

The Fund Defendants have joined with the Calamos Defendants[1] in the submission of a proposed memorandum in support of their Joint Motion to Dismiss the Complaint on the ground that the claims asserted therein are precluded by the Securities Litigation Uniform Standards Act of 1998, 15 U.S.C. §77p, §78bb ("SLUSA"). The Fund Defendants respectfully submit this Supplemental Memorandum in support of the alternative grounds set forth in the Joint Motion to Dismiss seeking the dismissal, as to them, of any claims in the Complaint that may survive SLUSA preclusion,[2] which are as follows: (i) that any claims derivative in nature should be

---

[1] The terms "Fund Defendants," "Fund," "Calamos Defendants" and "Independent Trustees" are defined in the Joint Motion to Dismiss.

[2] Although the law in this area is unsettled, a recent decision holds that "a federal court may exercise supplemental jurisdiction over any claims not preempted by SLUSA, in an action in which certain state law claims are preempted, pursuant to 28 U.S.C. § 1367(a)." *Feiner Family Trust v. Xcelera Inc.*, No. 10 C 3431, 2010 WL 3184482, *5 (S.D.N.Y. Aug. 9, 2010). Alternatively, this Court may choose to remand any remaining claims to the Circuit Court. *Winne v. The Equitable Life Assurance Soc'y of the U.S.*, 315 F. Supp. 2d 404, 416 (S.D.N.Y. 2003) (claims not precluded by SLUSA may be adjudicated by federal court or remanded to state

1

dismissed pursuant to Rule 12(b)(6) and Rule 23.1 of the Federal Rules of Civil Procedure for failure to allege demand on the Board of Trustees of the Fund, or to state with particularity the reasons Plaintiff should be excused from making demand; (ii) as to Count I of the Complaint, that dismissal as to the Independent Trustees pursuant to Rule 12(b)(6) is required in that, as a matter of law, the Independent Trustees do not owe the duties alleged in Count I or, if they do owe such duties, the facts alleged fail to state a claim for breach; and (iii) as to Counts II and III of the Complaint, that dismissal as to the Fund pursuant to Rule 12(b)(6) is required in that such counts fail to state a claim upon which relief can be granted.

## I.  ANY CLAIMS SURVIVING SLUSA PRECLUSION THAT ARE DERIVATIVE IN NATURE MUST BE DISMISSED FOR FAILURE TO COMPLY WITH THE DEMAND REQUIREMENT

The Complaint in this case does not plead an "exclusively derivative" action within the meaning of the exception from SLUSA preclusion set forth in 15 U.S.C. §78bb(f)(5)(C), and that exception therefore has no application.[3]  However, if any of the claims in the Complaint could be construed so as to avoid SLUSA preclusion, any surviving claims based upon injuries ostensibly sustained *by the Fund* as a consequence of the redemption of the ARPS would be derivative in nature.  *See* Joint Memorandum at pp. 13-14.[4]  Such claims must be dismissed for failure to

court).  Defendants respectfully submit that the interests of judicial economy would be served by this Court's retention of jurisdiction over any claims that might for some reason survive SLUSA preclusion, and therefore have raised their alternative grounds for dismissal in this Court. Defendants also believe it is appropriate for them to state their alternative grounds for dismissal at this time so that Plaintiff cannot later assert, in the event one or more claims are remanded to state court, that those grounds somehow have been waived.

[3] See Section II.A. of Defendants' proposed Joint Memorandum in Support of the Fund Defendants' and the Calamos Defendants' Motion to Dismiss Pursuant to SLUSA (the "Joint Memorandum").

[4] Such asserted injuries to the Fund are alleged in, *inter alia*, Complaint Paragraph 28 (overpayment for ARPS by Fund); 29-33 (debt financing at assertedly higher cost to the Fund,

make and plead demand upon the Board of the Fund prior to filing suit, or to state with particularity the reasons why Plaintiff failed to make demand. *See* Fed. R. Civ. P. 23.1; Del. R. Ch. Ct. 23.1; 805 ILCS 5/7.80(b).

The requirement of shareholder demand prior to the assertion of derivative claims is more than a pleading requirement; it is a substantive right of the shareholders and directors. *In re Abbott Laboratories Derivative Shareholders Litigation,* 325 F.3d 795, 804 (7th Cir. 2003) (applying Delaware law).[5] "Because directors are empowered to manage. . .the business and affairs of the corporation, the right of a stockholder to prosecute a derivative suit is limited to situations where the stockholder has demanded that the directors pursue the corporate claim and they have wrongfully refused to do so or where demand is excused because the directors are incapable of making an impartial decision regarding such litigation." *Rales v. Blasband,* 634 A.2d 927, 932 (Del. 1993) (internal citation omitted). Pursuant to Rule 23.1 of the Federal Rules of Civil Procedure, a plaintiff asserting a claim derivatively must "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors. . . and the reasons for the plaintiff's failure to obtain the action or for not making the effort." *In re Abbott,* 325 F.3d at 803-04 (citing Fed. R. Civ. P. 23.1). Where, as here, demand has *not* been made by the plaintiff, the action must be dismissed unless the shareholder alleges, *with particularity*, facts sufficient to establish that demand would be futile, and thus should be excused, because a majority of the board is unable to respond objectively to a demand. *Aronson v. Lewis*,

---

and on otherwise less favorable terms, than ARPS); 35 (increased Fund costs and reduced Fund cash flow); and 58 (fees and other payments made by the Fund).

[5] In a case involving a Delaware statutory trust, Delaware law applies to the pre-suit demand requirement. *See Hale v. China Online, Inc.*, No. 08 C 5548, 2009 WL 2601357, *3 (N.D. Ill. Aug. 21, 2009).

473 A.2d 805, 815 (Del. 1984) (overruled on other grounds). Plaintiff has not alleged particularized facts supporting demand futility. Accordingly, any claims surviving SLUSA preclusion that are derivative in nature should be dismissed.[6]

## II. COUNT I OF THE COMPLAINT FAILS TO STATE A CLAIM AGAINST THE INDEPENDENT TRUSTEES FOR BREACH OF FIDUCIARY DUTY

Count I of the Complaint asserts that the Independent Trustees breached asserted fiduciary duties to the common shareholders of the Fund by authorizing redemption of the ARPS. (Compl. ¶ 3) Plaintiff's bases for this charge are wholly conclusory (*id.*), unsupported (the Complaint nowhere alleges, for example, that any of the Trustees owned ARPS so as to have benefited personally from the redemptions), or speculative ("[o]n information and belief, the Defendants caused the redemption of the ARPS to provide liquidity to the holders of the ARPS and appease their investment banks and brokers") (Compl. ¶ 26) Such allegations do not meet even the basic pleading standards set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007), and its progeny. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v.*

---

[6] Plaintiff has incorporated in its Complaint so-called "Demand Letter Allegations," which allege that the Board of Trustees of the Fund (and two other Calamos funds) rejected shareholder demand letters received in 2010. (Compl. ¶¶ 42-44) Plaintiff does not rely upon these allegations to satisfy its own demand obligation as to any claims surviving SLUSA preclusion, nor could it do so. *Kaplan v. Peat Marwick, Mitchell & Co.*, 540 A.2d 726, 731 n.2 (Del. 1988) (a shareholder "cannot effectively rely on an earlier demand made by another. . . shareholder"). Moreover, even if Plaintiff could rely, and had relied, upon the shareholder demand referenced in the Complaint, it would not satisfy Plaintiff's pleading obligations, since a board decision to refuse a shareholder demand is protected by the business judgment rule. *Aronson v. Lewis*, 473 A.2d 805, 813 (Del. 1984). Accordingly, in order to survive a motion to dismiss in the context of a refused demand, a plaintiff must plead with particularity facts that raise a reasonable doubt as to the directors' good faith and/or the reasonableness of their investigation of the demand. *Boeing Co. v. Shrontz*, No. 11273, 1994 WL 30542, at *2 (Del. Ch. Jan. 19, 1994). Plaintiff has not attempted to do so here.

*Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal quotations omitted).

Under the pleading standards set by the Supreme Court, a complaint that pleads facts "merely consistent with a defendant's liability. . . stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotations omitted). Furthermore, conclusory allegations and formulaic recitations of the elements of a given claim will not suffice. *Twombly*, 550 U.S. at 555; *see also Iqbal*, 129 S.Ct. at 1949. A court need not accept as true conclusions of law, conclusions unsupported by the facts alleged, or unwarranted factual inferences. *Twombly*, 550 U.S. at 555. Here, the Complaint is devoid of well-pleaded factual allegations giving rise to a reasonable inference that the Independent Trustees' authorization of the ARPS' redemption constituted a breach of fiduciary duty, rather than a reasoned exercise of their business judgment. Consequently, the Complaint fails to state a claim for breach of fiduciary duty.

Moreover, as a Delaware statutory trust (Compl. ¶ 1), the Fund has taken steps to protect its Trustees from baseless claims of the sort asserted in this case. The governing instrument of a Delaware statutory trust defines the duties and liability, if any, of trustees for breach of fiduciary duties. *Cargill, Inc. v. JWH Special Circumstance LLC*, 959 A.2d 1096, 1112 (Del. Ch. 2008). Under Section 3806(e) the Delaware Statutory Trust Act (the "Act"), 12 Del. C. § 3806(e):

> "A governing instrument may provide for the limitation or elimination of any and all liabilities for breach of contract and breach of duties (including fiduciary duties) of a trustee, . . . to a statutory trust or to another trustee or beneficial owner . . . provided, that a governing instrument may not limit or eliminate liability for any act or omission that constitutes a bad faith violation of the implied contractual covenant of good faith and fair dealing."

The Amended and Restated Agreement and Declaration of Trust (the "Declaration") is

the governing instrument of the Fund.[7]  Pursuant to the authority conferred by the Delaware

Statutory Trust Act, Article IX, Section 9 of the Declaration excludes fiduciary or other

standards, as well as limitations on the acts or powers of the Trustees, inconsistent with the

authority, powers and limitations of liability established in the Declaration:

> "Applicable Law.    This Declaration and the Trust created
> hereunder are governed by and construed and administered
> according to the Delaware Act and the applicable laws of the State
> of Delaware; provided, however, that *there shall not be applicable
> to the Trust, the Trustees* or this Declaration of Trust . . . *any
> provisions of the laws (statutory or common) of the State of
> Delaware* (other than the Delaware Act) *pertaining to trusts which
> relate to or regulate . . . the establishment of fiduciary or other
> standards of responsibilities or limitations on the acts or powers of
> trustees*, *which are inconsistent with the limitations of liabilities or
> authorities and powers of the Trustees* set forth or referenced in
> this Declaration."  (Emphasis supplied)

The Complaint in this case completely ignores the governing Declaration, instead

alleging that the Trustees were subject to and breached asserted fiduciary duties "not to unfairly

favor the interest of one class of shareholders over another;" "not to cause one class of

shareholders to receive a benefit greater than that to which they are entitled at the expense of

---

[7]    The Declaration, effective on September 13, 2006 (see Exhibit 99a.1 to Amendment to Registration Statement filed with the Securities and Exchange Commission ("SEC") on Form N-2, February 22, 2008, *available at* http://www.sec.gov/Archives/edgar/data/1222719/000095013708002624/c19445a2exv99wxayx1y.htm), is in all respects discussed in this section identical to the Fund's original Agreement and Declaration of Trust dated April 12, 2003, Exhibit 99a.1 to the Fund's Registration Statement filed on March 14, 2003, *available at* http://www.sec.gov/Archives/edgar/data/1222719/000095013703001453/c75425exv99waw1.txt. In considering a motion to dismiss, a court may take judicial notice of documents in the public record.  *Pugh v. Tribune Co.*, 521 F.3d 686, 691 n.2 (7th Cir. 2008).  The Supreme Court also has approved consideration of matters of which a court may take judicial notice, as well as documents referenced in a complaint.  *Tellabs, Inc. v. Makor Issues and Rights, Ltd.*, 551 U.S. 308, 322 (2007).  The Fund's SEC filings and other documents are invoked by the Complaint in this case both generally (*see* Compl. ¶¶ 14, 17) and specifically (*see* Compl. ¶ 2, citing the Fund's July 28, 2003 Prospectus, and Compl. ¶ 33(b), citing an SEC Order discussed *infra* at p. 9), making consideration of such documents fully appropriate.

another class of shareholders;" and "not to engage in conduct that reduces the common shareholders' realized benefits in an investment in the Fund." (Compl. ¶ 46) Plaintiff cannot state a claim for breach of any such asserted "fiduciary duties" which would conflict with, and would impose limitations upon, the authorities and powers granted to the Trustees under the Declaration, which include the authority and power "[t]o borrow money;" "[t]o. . . *redeem*. . . Shares;" "to establish terms and conditions regarding. . .*redemption*. . .of. . .Shares;" and "to apply to any such...*redemption*...of Shares *any funds or property of the Trust*...." (Declaration Art. II, Section 2(f), (v)) (emphasis supplied) Count I should be dismissed for this additional reason.

As permitted by Section 3806(e) of the Act, the Declaration also narrowly limits the liability of the Fund's Trustees:

> "Provided they have exercised reasonable care and have acted under the reasonable belief that their actions are in the best interest of the Trust, *the Trustees* and officers of the Trust *shall not be responsible for any act or omission or for neglect or wrongdoing*. . . [except] liability . . . to which he would otherwise be subject by reason of willful misfeasance, bad faith, gross negligence or reckless disregard of the duties involved in the conduct of his office."

(Declaration Art. IV, Section 2 (emphasis supplied)) Thus, even if the Trustees owed the "fiduciary duties" alleged in Count I, no liability for breach of any such duties could exist absent "willful misfeasance, bad faith, gross negligence, or reckless disregard of the duties involved in the conduct of [their] office." *Id.* Here, Plaintiff fails to allege violations of this standard.

Moreover, the business judgment rule serves to protect the role of the Board of a Delaware business entity as the ultimate manager of its affairs. The rule operates "to preclude a court from imposing itself unreasonably on the business and affairs" of a business entity. *Shaper v. Bryan*, 371 Ill. App. 3d 1079, 1086-87 (1st Dist. 2007) (applying Delaware law); *Off v. Ross*,

No. 3468-VCP, 2008 WL 5053448, *11 (Del. Ch. Nov. 26, 2008) (applying the business judgment rule to a Delaware Statutory Trust). Pursuant to the business judgment rule, the Trustees are afforded a strong presumption that they "acted independently, with due care, in good faith, and in the honest belief that. . .[their]. . .actions were in the best interests of the stockholders." *Off*, 2008 WL 5053448 at *11. To rebut this presumption, Plaintiff must allege with particularity "fraud, bad faith or self-dealing in the usual sense of personal profit or betterment" by the Trustees. *Shaper,* 371 Ill. App. 3d at 1087 (citing *In re The Walt Disney Company*, 907 A.2d 693, 747 (Del. Ch. 2005)). The Complaint contains no well-pleaded allegations that could possibly meet this standard.

Nor could the Complaint plead such allegations. The ARPS redemption occurred in the wake of the collapse of the auction market in which the Fund's ARPS, and similar instruments issued by many other investment companies, had been purchased and sold. The resulting ARPS liquidity crisis prompted putative class action lawsuits brought by preferred shareholders, including a putative class action suit filed against another Calamos closed-end fund. *See Miller v. Calamos Global Dynamic Income Fund, et al*., Case No. 08 Civ. 3756 (S.D.N.Y.). The crisis also resulted in Congressional hearings, as well as written requests by the Chairman of the House Financial Services Committee directed to investment companies (like the Fund), urging them to act as quickly as possible to resolve the ARPS liquidity crisis, and to the SEC, urging it to act quickly on pending requests from mutual funds seeking regulatory clearance for action facilitating the redemption of ARPS.[8] One of the actions taken by the SEC was to grant investment companies (again including the Fund) temporary exemptions from asset coverage

---

[8] Press Release, U.S. House of Representatives Committee on Financial Services (July 31, 2008), *available at* http://financialservices.house.gov/press110/press073108.shtml.

requirements otherwise required by the ICA to facilitate their use of debt financing to redeem their outstanding auction rate preferred shares, such as the ARPS. (Compl. ¶ 33(b)) The SEC's Order as to the Fund contained the Agency's finding that "granting the requested exemption is appropriate in and consistent with the public interest, and consistent with the protection of investors and the purposes fairly intended by the policy and provisions" of the ICA. In re Calamos Convertible Opportunities and Income Fund, et al., Investment Company Act of 1940 Release No. 28615 (Feb. 10, 2009), at www.sec.gov/rules/ic/2009/ic-28615.pdf.

Shorn of its allegations of misrepresentation, Plaintiff's complaint is that the Trustees made a business decision to replace the ARPS with a different form of leverage, a decision with which the Plaintiff disagrees.[9] Such business decisions are the province of the board, and generally are not subject to review on their merits by courts. *See, e.g.*, *Weiss v. Samsonite Corp.*, 741 A.2d 366, 372 (Del. Ch. 1999) ("questions concerning the structure of a transaction, or what the resulting debt to equity ratio of the firm should be, are reserved to the board"). Count I of the Complaint therefore should be dismissed for failure to state a claim for breach of fiduciary duty.

## III. COUNTS II AND III FAIL TO STATE CLAIMS AGAINST THE FUND

Counts II and III of the Complaint purport to assert claims for aiding and abetting breach

---

[9] Plaintiff also contends that the ARPS should not have been redeemed at their full liquidation preference (Compl. ¶ 28); however, the ARPS could not be redeemed *except* at their liquidation preference. *See* Prospectus, Calamos Convertible and High Income Fund, filed with the SEC on July 29, 2003, at 41 (referenced in paragraph 2 of the Complaint), http://www.sec.gov/Archives/edgar/data/1222719/000095013703004011/c77184fe497.txt (stating the "price per share will be $25,000 per share, plus an amount equal to the accumulated but unpaid dividends thereon" in the event the Fund redeems ARPS "without the consent of the holders of ARPS"). The Complaint also ignores the Fund's disclosures concerning the use and sources of leverage, which disclosed that the Fund might choose not to employ leverage at all, or might "borrow money to 'leverage' their investment positions," subject to lending covenants and other restrictions. *See, e.g.,* Form N-CSR, June 26, 2008 (cited in Compl. ¶ 13(a)) at 34, *available at* http://www.sec.gov/Archives/edgar/data/1222719/000095013708008800/c27685nvcsrs.htm.

of fiduciary duty and unjust enrichment, respectively, against the "Calamos Defendants," a term which is defined to include the Fund. (Compl. ¶ 7C) Whether the inclusion of the Fund in these Counts was deliberate or unintentional, it surely is illogical. The Complaint alleges that the Fund is managed by the Individual Defendants (Compl. ¶ 7), and that their decision to authorize the redemption of the AMPS was not in the interest of the Fund (Compl. ¶ 28). These allegations contradict any contention that the Fund somehow "willfully and knowingly" *aided and abetted* a supposed breach of fiduciary duty. Count III, in turn, seeks to recover *from* the Fund fees *paid by the Fund* to Calamos Advisors LLC or Calamos Asset Management, Inc. But how could the Fund have been "unjustly enriched" by fees *it* paid? The Complaint offers no explanation.[10]

## CONCLUSION

The Fund Defendants respectfully request that in the event the Complaint is not dismissed in its entirety pursuant to SLUSA, the Court enter an Order dismissing any claims surviving SLUSA preclusion with prejudice for the reasons stated herein, and award the Fund Defendants their costs of suit and such other relief as the Court deems proper.

Dated:   January 28, 2011

John W. Rotunno
Paul J. Walsen
Molly K. McGinley
K&L GATES LLP
70 West Madison Street, Suite 3100
Chicago, Illinois 60602
Telephone: 312.372.1121
Facsimile: 312.345.9060

Respectfully submitted,

Weston W. Marsh, Joe F. Hanauer, John E. Neal, William R. Rybak, Stephen B. Timbers, David D. Tripple and Calamos Convertible and High Income Fund

By:_____/s/  John W. Rotunno_____
        One of their attorneys

---

[10] In further support of its motion to dismiss Counts II and III of the Complaint, the Fund adopts and incorporates by reference the arguments set forth in the Calamos Defendants' Supplemental Memorandum in Support of Joint Motion to Dismiss.

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that he caused the foregoing *Fund Defendants'
Supplemental Memorandum in Support of Joint Motion to Dismiss* to be served upon the
following counsel of record automatically via CM/ECF:

Marc I Gross                                    Kevin B. Dreher
Murielle J. Steven                              Michael F. Derksen
Jeremy A. Lieberman                             Morgan, Lewis & Bockius LLP
Pomerantz, Haudek, Grossman & Gross LLP          77 West Wacker Drive
100 Park Avenue, 26th Floor                      Chicago, Illinois 60601-5094
New York, New York 10017
Telephone: 212-661-1100
Facsimile: 212-661-8665
migross@pomlaw.com
mjsteven@pomlaw.com
jalieberman@pomlaw.com

Patrick V. Dahlstrom
Pomerantz, Haudek, Grossman & Gross LLP
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: 312-377-1181
Facsimile: 312-377-1184
pvdahlstrom@pomlaw.com

Christian J. Mixter
Patrick D. Conner
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541


                                    /s/  John W. Rotunno
                                    John W. Rotunno