**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RUTGERS CASUALTY INSURANCE COMPANY, individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | Case No. 11-cv-462 |
| | ) | |
| v. | ) | Judge Edmond E. Chang |
| | ) | |
| JOHN P. CALAMOS, SR., Trustee of the Calamos Convertible Opportunities and High Income Fund, et al., | ) ) ) | Magistrate Judge Morton Denlow |
| | ) | |
| Defendants. | ) | |

**JOINT MEMORANDUM IN SUPPORT OF THE FUND DEFENDANTS' AND THE
CALAMOS DEFENDANTS'
<u>MOTION TO DISMISS PURSUANT TO SLUSA</u>**

John W. Rotunno
Paul J. Walsen
Molly K. McGinley
K&L GATES LLP
70 West Madison Street, Suite 3100
Chicago, Illinois 60602-4207
Telephone: 312.372.1121
Facsimile: 312.827.8000

*Attorneys for defendants
Weston W. Marsh, Joe F. Hanauer,
John E. Neal, William R. Rybak,
Stephen B. Timbers, David D. Tripple
and Calamos Convertible and High
Income Fund*

Christian J. Mixter (*pro hac vice*)
Patrick D. Conner (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
Telephone: 202.739.3000
Facsimile: 202.739.3001

Kevin B. Dreher
Michael F. Derksen
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, Illinois 60601-5094
Telephone: 312.324.1000
Facsimile: 312.324.1001

*Attorneys for defendants John P. Calamos, Sr.,
Nick P. Calamos, Calamos Advisors LLC and
Calamos Asset Management, Inc.*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................1

PLAINTIFF'S ALLEGATIONS ............................................................................2

ARGUMENT ........................................................................................................5

I.     Each Element Of SLUSA Preclusion Is Satisfied In This Case, Requiring Dismissal Of The Complaint ........................................................................................6

     A.    "Covered Class Action"............................................................7

     B.    State Law ...........................................................................7

     C.    Misrepresentations Or Omissions Of Material Fact ................................7

     D.    "In Connection With" The Sale Of Covered Securities.........................11

II.    The Exceptions To SLUSA Preclusion Have No Application ...........................13

     A.    Plaintiff Has Not Brought An "Exclusively Derivative" Action ...........................13

     B.    The SLUSA Exception Defined In 15 U.S.C. § 78bb(f)(3) Does Not Apply........14

CONCLUSION.....................................................................................................19

1

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Anderson v. Merrill Lynch Pierce Fenner & Smith*,
   521 F. 3d 1278 (10th Cir. 2008) ..................................................... 6

*Atkinson v. Morgan Asset Mgmt, Inc.*,
   664 F. Supp. 2d 898 (W.D. Tenn. 2009)..................................................... 11, 16

*Beckett v. Mellon Investor Servs., LLC*,
   No. C06-5245, 2006 WL 3249189 (W.D. Wash. Nov. 8, 2006), *aff'd in relevant part*, 329 Fed. Appx. 721 (9th Cir. 2009) ............................ 8, 9, 11

*Comm'r of Internal Revenue v. Snite*,
   177 F.2d 819 (7th Cir. 1949) ..................................................... 17

*Daniels v. Morgan Asset Mgmt., Inc.*,
   No. 09-cv-2800, 2010 WL 4024604 (W.D. Tenn. Sept. 30, 2010) ................. 8

*Diana Allen Life Ins. Trust v. BP P.L.C., et al.*,
   No. 06 Civ 14209, 2008 WL 878190 (S.D.N.Y. Mar. 31, 2008) ................. 13

*Felton v. Morgan Stanley Dean Witter & Co.*,
   429 F. Supp. 2d 684 (S.D.N.Y. 2006)..................................................... 9

*Fisher v. Kanas*,
   487 F. Supp. 2d 270 (E.D.N.Y. 2007) ..................................................... 18

*G.F. Thomas Investments, L.P. v. Cleco Corp.*,
   317 F. Supp. 2d 673 (W.D. La. 2004)..................................................... 15

*Hogan v. Baker*,
   No. 305 cv 0073P, 2005 WL 1949476 (N.D. Tex. Aug. 12, 2005)................. 13

*Instituto de Prevision Militar v. Lehman Bros., Inc.*,
   485 F. Supp. 2d 1340 (S.D. Fla. 2007) ..................................................... 14

*Instituto de Prevision Militar v. Merrill Lynch*,
   546 F.3d 1340 (11th Cir. 2008) ..................................................... 12

*Kennedy v. Venrock Assoc.*,
   348 F.3d 584 (7th Cir. 2003) ..................................................... 13

*Kircher v. Putnam Funds Trust*,
   398 Ill. App. 3d 664 (5th Dist. 2010)..................................................... 9, 10

*Korsinsky v. Salomon Smith Barney, Inc.*,
    No. 01-cv-6058, 2002 WL 27775 (S.D.N.Y. Jan. 10, 2002) ............................................... 8

*Kramer v. Western Pacific Indus. Inc.*,
    546 A.2d 348 (Del. 1988) ........................................................................................... 13

*Kurz v. Fid. Mgmt. & Research Co.*,
    No. 07 C 709, 2008 WL 2397582 (S.D. Ill. June 10, 2008), *aff'd*, 556 F. 3d 639
    (7th Cir. 2009) ....................................................................................................... 8

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
    547 U.S. 71 (2006) ..................................................................................... 5, 6, 12, 16

*Potter v. Janus Investment Fund*,
    483 F. Supp. 2d 692, 698 (S.D. Ill. 2007) ......................................................................... 6

*Romano v. Kazacos*,
    609 F. 3d 512 (2d Cir. 2010) ........................................................................................ 9

*S.E.C. v. Sterling Precision Corp.*,
    393 F.2d 214 (2d Cir. 1968) ........................................................................................ 18

*Segal v. Fifth Third Bank*,
    581 F.3d 305 (6th Cir. 2009) ...................................................................................... 8, 9

*Stoody-Broser v. Bank of America, N.A.*,
    No. C08-02705, 2009 WL 2707393 (N.D. Cal. Aug. 25, 2009) ........................................... 9, 11

*Sullivan v. Holland & Knight LLP*,
    No. 09 C 531, 2010 WL 1558553 (M.D. Fla. Mar. 31, 2010) ............................................... 16

*Tellabs, Inc. v. Makor Issues and Rights, Ltd.*,
    551 U.S. 308 (2007) ................................................................................................. 17

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
    845 A.2d 1031 (Del. 2004) ......................................................................................... 13

*Zoren v. Genesis Energy, L.P.*,
    195 F. Supp. 2d 598 (D. Del 2002) ............................................................................... 15

## Statutes

12 Del. C. § 3818 ................................................................................................... 18

15 U.S.C. § 77 ............................................................................................... passim

15 U.S.C. § 78 ............................................................................................... passim

8 Del. C. § 160 ..................................................................................................... 18

Defendants Weston W. Marsh, Joe F. Hanauer, John E. Neal, William R. Rybak, Stephen B. Timbers and David D. Tripple (collectively, the "Independent Trustees") and Calamos Convertible and High Income Fund (together with the Independent Trustees, the "Fund Defendants"), by their attorneys, and Defendants Calamos Advisors LLC and Calamos Asset Management, Inc. (the "Calamos Corporate Defendants") and John P. Calamos, Sr., and Nick P. Calamos (together with the Calamos Corporate Defendants, the "Calamos Defendants"), by their attorneys, respectfully submit this Memorandum in support of their Joint Motion to Dismiss the Complaint of Plaintiff Rutgers Casualty Insurance Company ("Rutgers") on the ground that the claims asserted in the Complaint are precluded by the Securities Litigation Uniform Standards Act of 1998, 15 U.S.C. § 77p(b), § 78bb (f)(l) ("SLUSA").[1]

## PRELIMINARY STATEMENT

The Complaint in this case is brought by an investor in common shares of the Calamos Convertible and High Income Fund, a Delaware statutory trust and a closed-end investment company (the "Fund" or the "Trust") registered under the Investment Company Act of 1940, as amended (the "ICA"). (Compl. ¶¶ 1, 6, 7(k), 11) Rutgers purports to sue on behalf of a class of Fund shareholders, claiming a loss in the value of the putative class members' investment in Fund common shares. (Compl ¶¶ 1, 36-41, 48-49, 53-54, 59, 61-62, Prayer for Relief ¶ F) In summary, the Complaint alleges that the Fund's public statements described its ability to leverage its investments utilizing auction market preferred shares which were "perpetual" and "would continue indefinitely" (Compl. ¶ 14), but that the Fund instead redeemed those preferred

---

[1] The Fund Defendants and the Calamos Defendants also have moved to dismiss any claims that may survive SLUSA preclusion on various alternative grounds. Those alternative grounds are the subject of separate, supplemental memoranda filed by the Fund Defendants and the Calamos Defendants on January 28, 2011.

shares in 2008 and 2009, utilizing assertedly less favorable debt financing.  (Compl. ¶¶ 3, 25, 29, 30)  This is alleged to have "den[ied]. . .[common shareholders]. . .the financial benefits associated with" auction rate preferred shares and caused the value of common shares to decline.  (Compl. ¶¶ 27, 35)  The Defendants are alleged to have caused the Fund to redeem the ARPS while under an undisclosed conflict of interest.  (Compl. ¶¶ 3, 26)

Although the Complaint is pleaded in counts asserting breach of fiduciary duty by the Fund's Trustees, aiding and abetting a breach of fiduciary duty, and unjust enrichment (Compl. ¶¶ 45-62), the Complaint by its terms does not purport to be brought as a derivative action on behalf of the Fund, as one would expect of such state law claims.[2]  Instead the Complaint is cast as a class action based upon the Fund's alleged pronouncements concerning the benefits and advantages of an investment in common shares.  These allegations, selectively drawn from the Fund's Securities and Exchange Commission ("SEC") filings and other, unidentified public statements, betray Plaintiff's use of state law labels to mask claims predicated upon asserted misrepresentations and nondisclosures in connection with the sale of Fund common shares.  They also steer the Complaint directly into the path of SLUSA, which precludes the maintenance of this case as a class action and requires its dismissal with prejudice.

## PLAINTIFF'S ALLEGATIONS

Plaintiff Rutgers alleges that it has been an owner of common shares of the Fund since 2003.  (Compl. ¶ 6)  The putative class Rutgers purports to represent is defined to include

---

[2]     Despite the fact that Plaintiff purports to assert direct claims on behalf of a putative class, Plaintiff has included in its Complaint allegations relating to a letter sent by other common shareholders to the Fund demanding that the Board of the Fund take action to remedy alleged breaches in connection with the redemption of the Fund's auction rate preferred shares.  (Compl. ¶¶ 42-44)

"all. . .individuals who were the beneficial owners of common shares of the Fund at any time" from March 19, 2008 through the present.  (Compl. ¶¶ 1, 36)[3]

Rutgers alleges that the primary investment objective of the shares it purchased, as stated by the Fund in SEC filings, "is to provide total return through 'a combination of capital appreciation and current income'" and that a "a key aspect of the Fund's performance" is its use of financial leverage.  (Compl. ¶¶ 11, 14)  The Complaint alleges that the Fund's "Ability to Put Leverage to Work" was "advertis[ed]" as a "Potential Advantage of Closed-Fund Investing." (Compl. ¶ 14)  At the time of Plaintiff's investment, this leverage was provided by Auction Rate Preferred Shares ("ARPS")[4] issued by the Fund, which Rutgers alleges provided the Fund with very favorable financing.  (Comp. ¶¶ 2, 13)  "The effect of this leverage was reflected in the Fund's regular cash distributions to common shareholders and described in the Fund's regular reports to its shareholders." (Compl. ¶ 14)

The Fund also is alleged to have made public statements that the term of the ARPS "would continue indefinitely" and was "perpetual," a feature that was a "significant benefit" to the Fund's common shareholders, which made ARPS "a more attractive source of leverage than borrowing."  (Compl. ¶¶ 2, 13(b), 14, 32)  According to the Complaint, ARPS never had to be repaid, nor were they subject to redemption by the Fund.  (Compl. ¶¶ 2, 13(b), 24, 32)  On the

---

[3]     Two actions, purportedly brought on behalf of a putative class of shareholders of another Calamos fund, the Calamos Convertible Opportunities and Income Fund, are now pending before District Judge Elaine E. Bucklo and District Judge Robert M. Dow, Jr., respectively, on removal from the Circuit Court of Cook County.  *Brown v. Calamos, et al.*, Case No. 10-cv-6558; *Bourrienne v. Calamos, et al.*, Case No. 10-cv-7295.  The defendants in those cases have moved to dismiss under SLUSA. In *Brown*, the plaintiff has moved to remand.

[4]     The Complaint refers to the auction rate preferred shares issued by the Fund by two different acronyms, "ARPS" and "ARS."   In the interest of clarity and consistency, this Memorandum will refer to the shares as "ARPS."

latter point, Plaintiff alleges that the Fund represented, in a 2003 ARPS prospectus, that ARPS "are not redeemable by the Fund's shareholders." (Compl. ¶ 24)

Notwithstanding these representations, the "Individual Defendants" -- the Independent Trustees, Nick P. Calamos (a former Trustee) and John P. Calamos, Sr. (a Trustee and "an employee" of what the Complaint refers to as the "Calamos Sponsorship Group")[5] -- are alleged to have caused the Fund to redeem its outstanding ARPS in June 2008 and August 2009, and to have replaced the ARPS with debt financing that was not perpetual, and ostensibly is more risky and costly to the Fund than ARPS.  (Compl. ¶¶ 25, 30-33, 47-48)  Plaintiff contends that this action deprived common shareholders of "the financial benefits associated with ARPS." (Compl. ¶ 27)  *See also* Compl. ¶ 59, alleging that redemption of the ARPS "eliminat[ed]. . . the benefits to Plaintiff and the Class of an investment as common shareholders in the Fund."

The Complaint claims that the Individual Defendants were motivated to take this action by "economic self-interests" they supposedly shared with the Calamos Sponsorship Group. (Compl. ¶¶ 20, 26)  These "shared economic self-interests" ostensibly were served by providing liquidity to holders of ARPS following the February 2008 collapse of the auction market in which ARPS were purchased and sold.  (Compl. ¶¶ 20, 23, 26)  Plaintiff contends that the redemption furthered the interests of the Calamos Sponsorship Group and holders of ARPS at the expense of the interests of common shareholders.  (Compl. ¶¶ 3, 20, 26-27)

On August 13, 2010, Plaintiff Rutgers filed an action in this Court against each of the Defendants named in this case, which was assigned Case No. 10-cv-05106.  The Complaint in that action contained allegations similar to, and pleaded the same claims as, the Complaint in this

---

[5]      The Complaint defines the "Calamos Sponsorship Group" to include defendants Calamos Advisors LLC, Calamos Asset Management, Inc., and their affiliates.  (Compl. ¶ 15)

case. Plaintiff voluntarily dismissed Case No. 10-cv-05106 on October 6, 2010, and then filed

this action in the Circuit Court of Cook County on December 22, 2010. Defendants timely

removed the action to this Court pursuant to SLUSA on January 21, 2011.

Count I of the Complaint purports to assert a claim for breach of fiduciary duty against

the Individual Defendants. Count II purports to allege a claim for aiding and abetting the

asserted breach of fiduciary duty alleged in Count I, and Count III alleges a claim for unjust

enrichment. Counts II and III are brought against the Fund and the Calamos Corporate

Defendants.

## **ARGUMENT**

Congress enacted SLUSA in 1998 to prevent class action plaintiffs from using state law

legal theories, and state court venues, to evade the heightened pleading standards and other

requirements and limitations imposed in securities class actions by the Private Securities

Litigation Reform Act of 1995. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S.

71, 81-82 (2006). SLUSA added to the Securities Act of 1933, as amended (the "1933 Act") and

the Securities Exchange Act of 1934, as amended (the "1934 Act"), parallel provisions

precluding certain class actions brought under state law.[6] As amended by SLUSA, the 1934 Act

provides:

> "(1) *Class action limitations*. No covered class action based upon
> the statutory or common law of any State or subdivision thereof
> may be maintained in any State or Federal court by any private
> party alleging--
>
> (A) a misrepresentation or omission of a material fact in
> connection with the purchase or sale of a covered security; or

---

[6]    For ease of reference, all citations to SLUSA in this Memorandum will be to the
provisions of SLUSA appearing in the 1934 Act, unless otherwise appropriate.

> (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security."

15 U.S.C. § 78bb (f)(1). The parallel provision of the 1933 Act uses identical language, with the exception that it employs the phrase "untrue statement or omission of a material fact" in lieu of "misrepresentation or omission of material fact . . . ." 15 U.S.C. § 77p (b).

The Supreme Court has emphasized that SLUSA should be given a broad construction to serve SLUSA's stated purpose of preventing the use of state law-based class actions to evade the procedural and substantive protections of the PSLRA, and has applied SLUSA even where a plaintiff's claim would not be actionable under the federal securities laws. *Dabit*, 547 U.S. at 86 (holding that SLUSA precluded an alleged state law action for breach of fiduciary duty brought on behalf of a putative class comprised of "holders" of securities, even though such persons would not have had a private right of action under Section 10(b) of the 1934 Act and Rule 10b-5 thereunder).[7] Thus, although SLUSA does not preempt individual claims, or claims asserted derivatively, it altogether precludes class actions asserting claims within its scope, even where those claims could not be brought in a private federal securities action because one or more of the elements of such a cause of action is absent. *Id.*

## I.    Each Element Of SLUSA Preclusion Is Satisfied In This Case, Requiring Dismissal Of The Complaint

As set forth above, SLUSA precludes (1) "covered class actions" (2) based upon state law that (3) allege "a misrepresentation or omission of a material fact" (4) "in connection with

---

[7]    Similarly, SLUSA applies even though a complaint contains no allegation of scienter -- a requirement in private actions under Section 10(b) of the 1934 Act and Rule 10b-5. *Anderson v. Merrill Lynch Pierce Fenner & Smith*, 521 F. 3d 1278, 1285 (10th Cir. 2008); *Potter v. Janus Investment Fund*, 483 F. Supp. 2d 692, 698 (S.D. Ill. 2007).

the purchase or sale of a covered security."  Each of these requirements is met in this case, and this action therefore must be dismissed with prejudice.

### A.    <u>"Covered Class Action"</u>

A "covered class action," for purposes of SLUSA, includes any lawsuit in which damages are sought on behalf of 50 or more persons or prospective class members and common questions of law or fact predominate over individualized questions.  15 U.S.C. § 78bb (f)(5)(B).  Here, Plaintiff seeks monetary damages on behalf of a putative class consisting of "all persons who were the beneficial owners of common shares of. . .[the Fund]. . .at any time from March 19, 2008 through the present."  (Compl. ¶¶ 1, 36, Prayer for Relief ¶ F)  In addition, the Complaint alleges that common questions of law or fact predominate over individualized questions.  (Compl. ¶ 41)  Consequently, the first element of SLUSA preclusion is satisfied.

### B.    <u>State Law</u>

Plaintiff Rutgers' Complaint purports to assert claims under state law for breach of fiduciary duty (Count I), aiding and abetting a breach of fiduciary duty (Count II), and unjust enrichment (Count III).  Consequently, the second requirement for SLUSA preclusion also is satisfied as to each Count of the Complaint.

### C.    <u>Misrepresentations Or Omissions Of Material Fact</u>

As the allegations excerpted in Paragraph 5(d) of Defendants' Notice of Removal (Exhibit A hereto) demonstrate, the undeniable substance of Plaintiff's claim is that investors or prospective investors in Fund common shares were misled as to a feature of "significant value" to the common shareholders and a "key aspect" of the Fund's performance.  (Compl. ¶¶ 13(b), 14)  The premise of the Complaint is that the Defendants misled common shareholders by representing that the financing provided by ARPS was "perpetual" in that the ARPS supposedly were "not redeemable," but then redeemed the ARPS and substituted assertedly less favorable

financing in its place, ostensibly for the undisclosed purpose of serving the interests of the Calamos Sponsorship Group. (Compl. ¶¶ 2, 13(b), 14, 23, 24, 26, 30-33) Stated differently, the Complaint alleges that the Defendants said the Fund would do one thing, and then caused it to do another for undisclosed, allegedly improper reasons. *See Beckett v. Mellon Investor Servs., LLC.*, No. C06-5245, 2006 WL 3249189, *4 (W.D. Wash. Nov. 8, 2006), *aff'd in relevant part*, 329 Fed. Appx. 721 (9th Cir. 2009) (allegation that fees charged to plaintiff were not authorized by contract "implicitly allege[d] an omission of material fact").

Rutgers does, to be sure, disclaim any intention to assert a claim for fraud or misrepresentation (Compl. ¶5) -- a disclaimer which has become a standard averment in complaints attempting to skirt SLUSA preclusion, and which is utterly ineffective to do so. *Kurz v. Fid. Mgmt. & Research Co.*, No. 07 C 709, 2008 WL 2397582, *3 (S.D. Ill. June 10, 2008), *aff'd*, 556 F. 3d 639 (7th Cir. 2009) (recital in complaint "specifically disclaiming" any allegations of fraud, misrepresentation or omission was ineffective to avoid SLUSA preclusion); *Segal v. Fifth Third Bank*, 581 F.3d 305, 310-11 (6th Cir. 2009) ("a claimant does not have the . . . ability to disclaim the applicability of SLUSA to a complaint"); *Daniels v. Morgan Asset Mgmt., Inc.*, No. 09-cv-2800, 2010 WL 4024604, *6 (W.D. Tenn. Sept. 30, 2010) (disregarding express disclaimer of any relief based on "an untrue statement or omission of material fact in connection with the purchase, sale, or retention of a security"); *Korsinsky v. Salomon Smith Barney, Inc.*, No. 01-cv-6058, 2002 WL 27775, *4 (S.D.N.Y. Jan. 10, 2002) ("[a]lthough the complaint clearly states that '[t]his is not an action for fraud,' it outlines several instances of alleged misrepresentations"). The most the disclaimer's presence signifies is Plaintiff's recognition that, absent an effective disclaimer, this action satisfies SLUSA's requirements.

Similarly, the Complaint's avoidance of the terms "misrepresentation" and "omission" has no bearing on SLUSA's application. In determining whether a plaintiff has alleged a misrepresentation within the meaning of SLUSA, courts look to the substance of a complaint's allegations, not to the use of any particular words. *Segal*, 581 F.3d at 310. A plaintiff cannot avoid SLUSA preclusion through artful pleading "that removes the covered words from the complaint but leaves the covered concepts." *Id.* at 311. In applying SLUSA, the courts look to "the realities underlying the claims," not how the claim is cloaked in a complaint. *Romano v. Kazacos*, 609 F. 3d 512, 523 (2d Cir. 2010); *see also Rabin v. JP Morgan Chase Bank, N.A.,* No. 06-cv-5452, 2007 WL 2295795, *6 (N.D. Ill. Aug. 3, 2007) ("[a]ttempt by Plaintiffs to characterize their allegations of misrepresentation and omission of material facts as claims for breach of fiduciary duty and unjust enrichment is futile"); *Felton v. Morgan Stanley Dean Witter & Co.*, 429 F. Supp. 2d 684, 692-93 (S.D.N.Y. 2006) (holding that court "must look beyond the face of the complaint to analyze the substance of the allegations made," and concluding "that [p]laintiff's claim is a securities fraud wolf dressed up in a breach of contract sheep's clothing") (internal quotations omitted); *Beckett*, 2006 WL 3249189, at *3 (although there was "no explicit reference [in the complaint] to any fraudulent activity" such as a misrepresentation or omission of material fact, "[o]ne may infer that [p]laintiff has framed the pleading in an effort to avoid SLUSA preemption"); *Stoody-Broser v. Bank of America, N.A.*, No. C08-02705, 2009 WL 2707393, *2-3 (N.D. Cal. Aug. 25, 2009) (same).

The analysis applied in *Kircher v. Putnam Funds Trust*, 398 Ill. App. 3d 664 (5th Dist. 2010), is particularly instructive in light of Plaintiff Rutgers' allegation that Defendants benefited one class of shareholders at the expense of another. In *Kircher*, a putative class of mutual fund shareholders alleged claims sounding in negligence and breach of fiduciary duty arising out of

the allowance of short-term trading or "market timing" in the shares of the fund.  398 Ill. App. 3d at 667-68.  The plaintiffs alleged that although the defendants operated a mutual fund with the stated goal of providing long term capital growth to investors who held shares of the fund, they followed portfolio valuation procedures which benefited short term traders at the expense of long-term shareholders.  *Id.*  The plaintiffs argued that SLUSA did not apply because their claims did not sound in misrepresentation or fraud.  *Id.* at 670.  The court disagreed, holding that "the plaintiffs' allegations are based, at least implicitly, on the defendants' failure to disclose ... their method of calculating … [net asset value] … and the fact that this method has a potential to reward market-timing investors at the expense of long-term investors."  *Id*. at 673-74.  The court reasoned that the complaint at bottom alleged a claim for misrepresentation or omission of material fact, noting that if the defendants had disclosed the risks and potential impact of market timing, there could be no claim for negligence or breach of duty.  *Id*.

The same reasoning applies here.  Plaintiff's Complaint alleges that the Fund made public statements indicating that ARPS were "not redeemable" and had a "perpetual term," a feature that was a "key aspect" of the Fund's performance and "particularly significant" to the Fund's common shareholders, which made ARPS "a more attractive source of leverage than borrowing." (Compl. ¶¶ 13(b), 14, 24, 32)  Plaintiff complains that contrary to the representations about these and other benefits of ARPS, the Defendants caused the ARPS to be redeemed by the Fund in order to provide liquidity to the ARPS holders and to further the business objectives of the Calamos Sponsorship Group.  (Compl. ¶¶ 18-20, 23, 25-26)  This assertedly has "den[ied] them financial benefits associated with the ARPS" and "eliminat[ed] one of the major benefits of the investment."  (Compl. ¶¶ 27, 47)  These allegations necessarily assume a purported failure to disclose that the ARPS might be, or would be, replaced with shorter term and/or higher cost

leverage, since if such a disclosure had been made, no claim could exist.[8]  *Stoody-Broser*, 2009

WL 2707393, at *4 (purported breach of fiduciary duty claims assessed against trustee of assets

invested in affiliated mutual funds inherently involved a failure of disclosure).[9]

In short, all that distinguishes Rutgers' Complaint from a conventional securities fraud

action is its reliance on state law in lieu of Rule 10b-5.  The Complaint thus presents a paradigm

case for SLUSA preclusion.  *See, e.g., Rabin*, 2007 WL 2295795 at *6 (analyzing the substance

of allegations of breach of fiduciary duty, the court found "that at the heart of the Amended

Complaint is that Defendants misrepresented and omitted material facts related to the purchase

of shares of the Fund").  Moreover, Rutgers' allegations concerning the Fund's public statements

are incorporated into each Count, requiring the dismissal of the Complaint in its entirety and with

prejudice.  *Atkinson v. Morgan Asset Mgmt, Inc.*, 664 F. Supp. 2d 898, 907 (W.D. Tenn. 2009)

(amendment of complaint would be futile "because allegations of omissions or other deceitful

activity are irreparably interwoven throughout Plaintiffs' causes of action").

### D.    "In Connection With" The Sale Of Covered Securities

The common shares of the Fund are "covered securities" within the meaning of SLUSA.

As defined in SLUSA, "covered securities" means "a security that satisfies the standards for a

covered security specified in paragraph (1) or (2) of Section 18(b) of the 1933 Act . . . at the time

---

[8]     Defendants do not in any way concede that there was any failure of disclosure, or any misrepresentation of fact, concerning the uses and sources of leverage the Fund might employ, or as to any other matter alleged in the Complaint.  *See, e.g.,* the Fund Defendants' Supplemental Memorandum in Support of Joint Motion to Dismiss ("Supplemental Memorandum") at 9, n. 9.

[9]     Plaintiff also claims that the Calamos Defendants received "fees and other revenues" as a result of the redemption and refinancing of the ARPS.  (Compl. ¶ 58)  Claims "for excessive fees caused by … investments … have been universally found to be preempted by SLUSA."  *Stoody-Broser,* 2009 WL 2707393, at *4; *see also Beckett,* 2006 WL 3249189, at *4 (a "request for recovery of allegedly unlawfully obtained fees and charges … [on the] … sale of securities is subject to SLUSA preemption").

during which it is alleged that the misrepresentation . . . [or] . . . omission occurred . . . ." 15 U.S.C § 78bb (f)(5)(E). Section 18(b) of the 1933 Act, in turn, defines a covered security to include securities listed on a national exchange, as well as securities issued by an investment company registered under the ICA. 15 U.S.C. § 77r(b)(1), (2). Here, the Fund's common shares satisfy both standards: the common shares are traded on the New York Stock Exchange, and they were issued by an investment company (the Fund) registered under the ICA. (Compl. ¶ 11) *Instituto de Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1351 n. 2 (11th Cir. 2008) (shares issued by registered investment companies are "covered securities" under 15 U.S.C. § 77r(b)).

The Complaint also easily meets the requirement of SLUSA that a misrepresentation or omission of material fact be "in connection with" the purchase or sale of a covered security. The Supreme Court has construed the "in connection with" requirement broadly, holding that "it is enough that the fraud alleged 'coincide' with a securities transaction -- whether by the plaintiff or by someone else." *Dabit*, 547 U.S. at 85, 89. That unquestionably is the case alleged here, where the Complaint asserts that the Fund filed SEC reports and made public pronouncements concerning the allegedly "perpetual" nature of ARPS financing that was a "key aspect" of the Fund's performance, "particularly significant" to common shareholders and one of "the major benefits of [an]. . .investment" in common stock of the Fund. (Compl. ¶¶ 13(b), 14, 47)

The Complaint attempts to evade SLUSA preclusion by defining a class consisting of "owners," rather than purchasers or sellers, of the Fund's common shares. (Compl. ¶¶ 1, 36) The Supreme Court squarely rejected such an attempted end-run around SLUSA in *Dabit*, holding that "[f]or purposes of SLUSA pre-emption, that distinction [between 'holders' and purchasers or sellers of securities] is irrelevant; the identity of the plaintiffs does not determine whether the complaint alleges fraud 'in connection with the purchase or sale' of securities."

*Dabit*, 547 U.S. at 89. Under *Dabit*, the inquiry focuses on the defendant's alleged conduct, rather than the identity of the plaintiff. *Rabin*, 2007 WL 2295795, at *7.

## II. The Exceptions To SLUSA Preclusion Have No Application

SLUSA excepts narrowly defined categories of cases from preclusion: (1) "an *exclusively derivative* action brought . . . on behalf of a corporation" 15 U.S.C. § 78bb (f)(5)(C) (emphasis supplied); and (2) certain cases brought under state law and involving a specific fact pattern. 15 U.S.C. § 78bb (f)(3). Neither exception is applicable in this case.

### A. Plaintiff Has Not Brought An "Exclusively Derivative" Action

The first SLUSA exception applies to "exclusively derivative" actions. Typically, a derivative case is one brought by a shareholder in the name of a corporation, seeking to obtain for the corporation redress for some harm that the corporation allegedly has suffered. *Tooley v. Donaldson, Lufkin & Jenrette, Inc.,* 845 A.2d 1031, 1035 (Del. 2004). In contrast to a direct claim, where the injury suffered is the claimant's alone, "independent of any alleged injury to the corporation," a claim is derivative when the plaintiff cannot prevail without showing an injury to the corporation. *Id.* at 1039;[10] *see also Kramer v. Western Pacific Indus. Inc.*, 546 A.2d 348, 353 (Del. 1988) (if the only injury to an investor is the indirect harm which consists of diminution in the value of his or her shares, the suit must be derivative); *Diana Allen Life Ins. Trust v. BP P.L.C., et al.*, No. 06 Civ 14209, 2008 WL 878190, *5 (S.D.N.Y. Mar. 31, 2008) (action under Delaware law based on a reduction in royalty payment to trust unit holders was derivative

---

[10] "The question of whether a suit is derivative by nature or may be brought by a shareholder in his own right is governed by the law of the state of incorporation." *Kennedy v. Venrock Assoc.*, 348 F.3d 584, 589 (7th Cir. 2003). Although *Tooley* involved a corporation, rather than a mutual fund, the test set forth in *Tooley* also applies to the determination of whether a claim against a mutual fund must be brought directly or derivatively. *See Hogan v. Baker*, No. 305 cv 0073P, 2005 WL 1949476, *2 (N.D. Tex. Aug. 12, 2005).

because "[a]ny loss in royalty interest as a result of the. . .[alleged conduct] . . . flowed directly to the Trust, and only indirectly to the Unit Holders").

In many ways, this is the sort of harm that Plaintiff Rutgers pleads in its Complaint here: all its claimed injuries flow from alleged harm to the Fund, as a result of an asserted increase in the Fund's cost of leverage and other disadvantages to the Fund ostensibly resulting from debt financing. (*See, e.g.,* Compl. ¶¶ 31-35, 48, 53, 58-59) But in other respects, Plaintiff's Complaint makes clear that this case is not brought as an "exclusively derivative" action within the meaning of SLUSA. (Compl. ¶¶ 1, 36-41) For one thing, the Complaint itself is styled as a class action, not a derivative suit. (Comp. ¶¶ 1, 21, 42-44) For another, Plaintiff has not met the demand requirement (discussed in the Fund Defendants' Supplemental Memorandum at 2-4) for filing a derivative case.[11] Consequently, the exception of "exclusively derivative" actions from SLUSA's preemptive reach has no application to the Complaint. *Instituto de Prevision Militar v. Lehman Bros., Inc.*, 485 F. Supp. 2d 1340, 1346 (S.D. Fla. 2007) (where plaintiff failed to allege it had met the Rule 23.1 requirements for a derivative action and had not styled its action as a derivative suit, case did not qualify for exception to SLUSA).

## B.    The SLUSA Exception Defined In 15 U.S.C. § 78bb(f)(3) Does Not Apply

The second exception to SLUSA preclusion is equally inapplicable. It provides that a "covered class action . . . that is based upon the statutory or common law of the State in which the issuer is incorporated (in the case of a corporation) or organized (in the case of any other entity) may be maintained" in state or federal court *if* the case involves:

---

[11]    The curious "Demand Letter Allegations" appearing in paragraphs 42-44 of the Complaint do not satisfy the demand requirement applicable to derivative actions. *See* the Fund Defendants' Supplemental Memorandum at 4, n. 6.

(I)  the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or to holders of equity securities of the issuer; or

(II)  any recommendation, position, or other communication with respect to the sale of securities of an issuer that--

(aa)    is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and

(bb)    concerns decisions of such equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.

15 U.S.C. § 78bb (f)(3)(A).  This provision, referred to as the "Delaware carve-out," was adopted to exempt from SLUSA preclusion shareholder litigation that is based on a breach of the duty of disclosure in connection with an issuer's purchase or sale of securities to or from existing shareholders, or in connection with communications with existing shareholders with respect to the matters described in the exemption.  S. Rep. No. 105-182, at 6 (1998), *available at* 1998 WL 226714; H.R. Conf. Rep. No. 105-803, at 14 n.2 (1998), *available at* 1998 WL 703964.  Neither subsection of the Delaware carve-out has any application here.

The first Delaware carve-out is inapplicable for the reason that there is no allegation, nor could there be, that the common shares "owned" by members of the putative class during the class period were sold "exclusively … to holders of equity securities of the issuer," as the carve-out requires.  15 U.S.C § 78bb(f) (3)(A)(ii)(I).  "If the shares are offered or traded in the open market," as is the case here, "the Delaware carve-out exception is not met."  *G.F. Thomas Investments, L.P. v. Cleco Corp.*, 317 F. Supp. 2d 673, 682 (W.D. La. 2004); *see also Zoren v. Genesis Energy, L.P.*, 195 F. Supp. 2d 598, 604 (D. Del 2002) (because public offerings of partnership units "unquestionably involved a purchase or sale to prospective unitholders, not simply those who already owned . . . units, the exception cannot apply"); *Sullivan v. Holland &*

*Knight LLP*, No. 09 C 531, 2010 WL 1558553, *6-7 (M.D. Fla. Mar. 31, 2010) (first Delaware carve-out did not apply where alleged misrepresentations were made to prospective investors).

Plaintiff may attempt to argue that the first Delaware carve-out applies nonetheless because the Fund redeemed ARPS from ARPS holders. Such an argument would fail, for several reasons. For one thing, the ARPS owners are not alleged to have been injured in any way by the misrepresentations alleged in Rutgers' Complaint. To the contrary, ARPS owners are alleged to have *benefitted* from the redemption of their ARPS (Compl. ¶¶ 34, 46-47), and consequently no claim is or could be brought on their behalf. Plaintiff cannot evade the preclusive effect of SLUSA by bringing a putative class action on behalf of *one* class of security holders, and then relying upon transactions with *another* class of security holders to escape preclusion. *Sullivan*, 2010 WL 1558553, at *6-7 (Delaware carve-out did not apply where plaintiff, suing on behalf of a putative class of initial purchasers of partnership interests, made no claim involving the purchase or sale of interests from or to existing investors). Permitting a plaintiff to evade preclusion in this matter would contravene the Supreme Court's admonition that SLUSA preclusion is to be construed broadly. *Atkinson,* 664 F. Supp. 2d at 905 ("Broadly interpreting . . . the first Delaware Carve-Out would . . . contravene the Supreme Court's holding in *Dabit* that courts are to read SLUSA's preclusion provisions broadly").

Furthermore, the first Delaware carve-out applies only to "[t]he purchase or sale of securities by the issuer . . . ." 15 U.S.C. § 78bb (3)(A)(ii)(I). Here, the ARPS were *redeemed*, not purchased, by the Fund. (Compl. ¶¶ 3, 25, 28, 33(b), 35(d), 47) A redemption of securities is legally and practically different from a purchase. A purchase transaction is consensual, and therefore confronts a shareholder with an investment decision, *i.e.*, whether or not to sell his or her shares at the price offered by a prospective purchaser. Consequently, the adequacy and

completeness of disclosures is a relevant consideration where, for example, an issuer offers to purchase its own shares from investors. In contrast, the ARPS redemption was non-consensual; holders of ARPS had no choice in the matter once the Fund determined to redeem their ARPS.[12]

The Seventh Circuit identified another distinction between purchases and redemptions of shares in the process of construing the terms "redeem" and "redemption," as used in the Internal Revenue Code of 1986, as amended:

> "Redemption in this section, we believe, connotes something other than repurchase; it includes the idea of a surrender of shares by a stockholder and a retirement of that which he surrenders . . . .
>
> A true redemption of stock, preferred or common, occurs when it is called and retired. The stockholder, in such instance, receives the redemption money in discharge of his shares which are thereby thereafter without legal existence. On the other hand, when a corporation purchases its own capital stock it deals in the shares as it might have done in the stock of another corporation."

*Comm'r of Internal Revenue v. Snite*, 177 F.2d 819, 823 (7th Cir. 1949). Here the allegations of the Complaint make clear that the redemption of the ARPS was a "true redemption," not a purchase, of the ARPS: the Complaint universally (and correctly) refers to the Fund's "redemption" of its ARPS, never to the "purchase" of ARPS, and an essential premise of the Complaint is that once having been redeemed, the asserted benefits of ARPS financing were forever lost to the Fund (*i.e.*, unlike stock purchased by an issuer, ARPS that have been redeemed cannot be sold to new investors). (*See, e.g.,* Compl. ¶¶ 3, 25, 26, 28, 33(b), 35(d), 47)

---

[12]     *See* Prospectus, Calamos Convertible and High Income Fund, filed with the SEC on July 29, 2003, at 41 (referenced in paragraph 2 of the Complaint), *available at* http://www.sec.gov/Archives/edgar/data/1222719/000095013703004011/c77184fe497.txt (stating that in the event the Fund redeems ARPS, it is "without the consent of the holders of ARPS"). The Supreme Court has approved consideration of documents referenced in a complaint on a motion to dismiss. *Tellabs, Inc. v. Makor Issues and Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Moreover, the distinction between "purchases" and "redemptions" of shares is maintained in the ICA, which governs the Fund. (Compl. ¶ 11)  In *S.E.C. v. Sterling Precision Corp.*, 393 F.2d 214, 217-20 (2d Cir. 1968), the Second Circuit considered whether a corporation's redemptions of bonds and preferred stock constituted a "purchase" of securities under Section 17(a) of the ICA.  The Court began with the observation that "the normal discourse of lawyers sets redemptions apart from purchases," a distinction recognized by Delaware statute, case law, and other authorities.  *Sterling*, 393 F.2d at 217.  It went on to conclude that "Congress would not have meant to include total redemptions or pro rata ones" within the term "purchase" in Section 17(a).  *Id.* at 218; *see also* 8 Del. C. § 160 (separately referencing, and thereby distinguishing, purchases and redemptions of shares by the corporate issuer).  The Delaware Statutory Trust Act, Section 3818, similarly distinguishes between purchases and redemptions of beneficial interests in a trust, stating:  "[A] statutory trust may acquire, by purchase, redemption or otherwise, any beneficial interest in the statutory trust held by a beneficial owner of the statutory trust." 12 Del. C. § 3818.

Finally, the second Delaware carve-out (relating to communications concerning decisions of equity holders with respect to voting their securities, responding to a tender or exchange offer, or exercising dissenters' or appraisal rights) can have no conceivable application here, since Rutgers' Complaint contains no allegations respecting any such communications. *Fisher v. Kanas*, 487 F. Supp. 2d 270, 280 (E.D.N.Y. 2007) (although complaint sufficiently alleged a misrepresentation "in connection with" the purchase or sale of a covered security, it did not allege a recommendation or communication regarding the sale of securities).

## CONCLUSION

The Complaint in this case is a paradigm of the kind of action which SLUSA was enacted to address, and to extinguish.  It is a Complaint which, if brought as a class action prior to the adoption of the PSLRA, undoubtedly would have been filed under the federal securities laws, and which now masquerades in state law costume only to avoid the strictures of that Act. SLUSA squarely applies to, and precludes, Plaintiff's purported state law class action.

For the foregoing reasons, each of the claims asserted in Plaintiff Rutgers' Complaint should be dismissed with prejudice.

Dated:   February 1, 2011

John W. Rotunno
Paul J. Walsen
Molly K. McGinley
K&L GATES LLP
70 West Madison Street, Suite 3100
Chicago, Illinois 60602
Telephone: 312.372.1121
Facsimile: 312.345.9060

Christian J. Mixter (*pro hac vice*)
Patrick D. Conner (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
Telephone: 202.739.3000

Kevin B. Dreher
Michael F. Derksen
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, Illinois 60601-5094
Telephone: 312.324.1000
Facsimile: 312.324.1001

Respectfully submitted,

Weston W. Marsh, Joe F. Hanauer, John E. Neal, William R. Rybak, Stephen B. Timbers, David D. Tripple and Calamos Convertible and High Income Fund

By: _____/s/  John W. Rotunno_____
        One of their attorneys

Defendants John P. Calamos, Sr., Nick P. Calamos, Calamos Advisors LLC, and Calamos Asset Management, Inc.

By: _____/s/  Christian J. Mixter_____
        One of their attorneys

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that he caused the foregoing *Joint Memorandum In Support Of The Fund Defendants' And The Calamos Defendants' Motion To Dismiss Pursuant To SLUSA*, to be served automatically via CM/ECF upon the following counsel of record:

Marc I Gross
Murielle J. Steven
Jeremy A. Lieberman
Pomerantz, Haudek, Grossman & Gross LLP
100 Park Avenue, 26th Floor
New York, New York 10017
Telephone: 212-661-1100
Facsimile: 212-661-8665
migross@pomlaw.com
mjsteven@pomlaw.com
jalieberman@pomlaw.com

Patrick V. Dahlstrom
Pomerantz, Haudek, Grossman & Gross LLP
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: 312-377-1181
Facsimile: 312-377-1184
pvdahlstrom@pomlaw.com

 

 

 

 

       /s/ John W. Rotunno      
        John W. Rotunno