# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RUTGERS CASUALTY INSURANCE COMPANY, individually and on behalf of all others similarly situated, ) ) ) ) | |
| Plaintiff, ) | Case No. 11-cv-462 |
| ) | |
| v. ) | Judge Edmond E. Chang |
| ) | |
| JOHN P. CALAMOS, SR., Trustee of the Calamos Convertible and High Income Fund, et al., ) ) ) ) | Magistrate Judge Morton Denlow |
| Defendants. ) | |

## JOINT RESPONSE OF FUND DEFENDANTS AND CALAMOS DEFENDANTS IN OPPOSITION TO MOTION TO REMAND

John W. Rotunno
Paul J. Walsen
Molly K. McGinley
K&L GATES LLP
70 West Madison Street, Suite 3100
Chicago, Illinois 60602-4207
Telephone: 312.372.1121
Facsimile: 312.827.8000

*Attorneys for defendants
Weston W. Marsh, Joe F. Hanauer,
John E. Neal, William R. Rybak,
Stephen B. Timbers, David D. Tripple
and Calamos Convertible and High
Income Fund*

Christian J. Mixter (*pro hac vice*)
Patrick D. Conner (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
Telephone: 202.739.3000
Facsimile: 202.739.3001

Kevin B. Dreher
Michael F. Derksen
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, Illinois 60601-5094
Telephone: 312.324.1000
Facsimile: 312.324.1001

*Attorneys for defendants John P. Calamos, Sr.,
Nick P. Calamos, Calamos Advisors LLC and
Calamos Asset Management, Inc.*

**TABLE OF CONTENTS**

      **Page**

PRELIMINARY STATEMENT ................................................................................................ 1

PLAINTIFF'S ALLEGATIONS ................................................................................................. 2

ARGUMENT ................................................................................................................................ 4

    I.    PLAINTIFF CONCEDES THAT THREE OF THE FOUR CONDITIONS FOR SLUSA REMOVAL ARE SATISFIED .......................................................... 6

    II.    SLUSA'S FOURTH REQUIREMENT FOR REMOVAL IS SATISFIED ............ 7

        A.    Plaintiff's "Disclaimer" Is Wholly Ineffective ............................................ 7

        B.    Plaintiff's Avoidance Of The Terms "Misrepresentation" Or "Omission" Has No Bearing On SLUSA's Application .............................. 8

        C.    SLUSA's "In Connection With" Requirement Also Is Met ...................... 12

    III.    PLAINTIFF'S ARGUMENT CONCERNING THE CLASS ACTION FAIRNESS ACT OF 2005 ("CAFA") IS INAPPOSITE ....................................... 14

CONCLUSION ........................................................................................................................... 14

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Anderson v. Merrill Lynch Pierce Fenner & Smith*,
521 F.3d 1278 (10th Cir. 2008) ................................................................................. 6

*Beckett v. Mellon Investor Servs, Inc.*,
No. C06-5245, 2006 WL 3249189 (W.D. Wash. Nov. 8, 2006), *aff'd in relevant part*, 329 Fed. Appx. 721 (9th Cir. 2009) ..................................................... 9, 10

*Bourrienne v. Calamos, et al.*,
Case No. 10-cv-7295 ................................................................................................. 4

*Brown v. Calamos, et al.*,
Case No. 10-cv-6558 ................................................................................................. 4

*Daniels v. Morgan Asset Mgmt., Inc.*,
No. 09-cv-2800, 2010 WL 4024604 (W.D. Tenn. Sept. 30, 2010) .............................. 7, 10

*Felton v. Morgan Stanley Dean Witter & Co.*,
429 F. Supp. 2d 684 (S.D.N.Y. 2006) ........................................................................ 9

*In re Mut. Funds Inv. Litig.*,
309 Fed. Appx. 722 (4th Cir. 2009) .......................................................................... 10

*Kircher v. Putnam Funds Trust*,
398 Ill. App. 3d 664, 922 N.E.2d 1164, 337 Ill. Dec. 587 (5th Dist. 2010) ..................... 11

*Kircher v. Putnam Funds Trust*,
403 F.3d 478 (2005), *rev'd on other grounds*, 547 U.S. 633 (2006) ............................... 13

*Korsinsky v. Salomon Smith Barney, Inc.*,
No. 01-cv-6058, 2002 WL 27775 (S.D.N.Y. Jan. 10, 2002) ............................................ 7

*Kurz v. Fid. Mgmt. & Research Co.*,
No. 07 C 709, 2008 WL 2397582 (S.D. Ill. June 10, 2008), *aff'd*, 556 F. 3d 639 (7th Cir. 2009) ....................................................................................................... 7, 8

*Kutten v. Bank of America, N.A.*,
530 F.3d 669 (8th Cir. 2008) ................................................................................... 11

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
547 U.S. 71 (2006) ........................................................................................ 5, 12, 13

*Potter v. Janus Inv. Fund*,
483 F. Supp. 2d 692 (S.D. Ill. 2007) .......................................................................... 6

Page(s)

*Rabin v. JPMorgan Chase Bank, N.A.*,
  No. 06 C 5452, 2007 WL 2295795 (N.D. Ill. Aug. 3, 2007) ................................. 9, 10, 13

*Romano v. Kazacos*,
  609 F.3d 512 (2d Cir. 2010) ........................................................................................... 9

*Segal v. Fifth Third Bank*,
  581 F.3d 305 (6th Cir. 2009) ............................................................................... 7, 8, 11

*Stoody-Broser v. Bank of America, N.A.*,
  No. C08-02705, 2009 WL 2707393 (N.D. Cal. Aug. 25, 2009) ............................ 9, 10, 12

*U.S. Mortgage, Inc. v. Saxton*,
  494 F.3d 833 (9th Cir. 2007) ...................................................................................... 14

*United States v. O'Hagan*,
  521 U.S. 642 (1997) ..................................................................................................... 13

## Statutes

15 U.S.C. § 77p ........................................................................................................... passim

15 U.S.C. § 78bb ......................................................................................................... passim

15 U.S.C. § 78j ..................................................................................................................... 6

15 U.S.C. § 78u-4 ........................................................................................................... 5, 14

28 U.S.C. § 1332 ................................................................................................................. 14

## Rules

17 C.F.R. § 240.10b-5 ........................................................................................................... 6

Defendant Calamos Convertible and High Income Fund and its Independent Trustees, defendants Weston W. Marsh, Joe F. Hanauer, John E. Neal, William R. Rybak, Stephen B. Timbers and David D. Tripple, by their attorneys, and defendants John P. Calamos, Sr., Nick P. Calamos, Calamos Advisors LLC and Calamos Asset Management, Inc., by their attorneys, respectfully submit this Memorandum in opposition to Plaintiff's motion to remand this action to the Circuit Court of Cook County, Illinois, from which it was removed pursuant to the Securities Litigation Uniform Standards Act, 15 U.S.C. § 77p(b), § 78bb(f)(l)  ("SLUSA" or the "Act").

## PRELIMINARY STATEMENT

The Complaint in this case is brought by an investor in common shares of the Calamos Convertible and High Income Fund, a Delaware statutory trust and a closed-end investment company (the "Fund" or the "Trust") registered under the Investment Company Act of 1940, as amended.  (Compl. ¶¶ 1, 6, 7(k), 11)  Plaintiff Rutgers Casualty Insurance Co. ("Rutgers") purports to sue on behalf of a class of Fund shareholders, claiming a loss in the value of the putative class members' investment in Fund common shares.  (Compl ¶¶ 1, 27, 35(d), 36-41, 48-49, 53-54, 59, 61-62, Prayer for Relief ¶ F)  In summary, the Complaint alleges that the Fund's public statements described its ability to leverage its investments utilizing auction market preferred shares ("ARPS")[1] and represented that "holders of its common stock could realize, as one of the significant benefits of this investment, leverage that would continue indefinitely, since the ARPS were perpetual." (Compl. ¶ 14)  Notwithstanding these representations, the Fund is alleged to have redeemed the ARPS in 2008 and 2009 utilizing assertedly less favorable debt financing.  (Compl. ¶¶ 3, 25, 29, 30)  The Complaint alleges that this "den[ied]. . .[common

---

[1]  The Complaint refers to the auction rate preferred shares issued by the Fund by two different acronyms, "ARPS" and "ARS."  In the interest of clarity and consistency, this Memorandum will refer to the shares as "ARPS."

shareholders]. . .the financial benefits associated with" ARPS and caused the value of the Fund's common shares to decline. (Compl. ¶¶ 27, 35) The Defendants are alleged to have caused the Fund to redeem the ARPS while under an undisclosed conflict of interest. (Compl. ¶¶ 3, 26)

The Complaint is cast as a class action predicated upon the Fund's alleged pronouncements concerning the benefits and advantages of an investment in common shares and alleged assurances that the Fund would "indefinitely" employ ARPS to provide leverage. These allegations, selectively drawn from the Fund's Securities and Exchange Commission ("SEC") filings and other, unidentified public statements, betray Plaintiff's use of state law labels to mask claims predicated upon asserted misrepresentations and nondisclosures in connection with the sale of Fund common shares. They also bring the Complaint directly into the path of SLUSA, which authorizes the removal of this case to federal court and precludes its maintenance as a class action.

## PLAINTIFF'S ALLEGATIONS

According to the Complaint, Plaintiff Rutgers has been an owner of common shares of the Fund since 2003. (Compl. ¶ 6) The putative class Rutgers purports to represent is defined to include "all. . .individuals who were the beneficial owners of common shares of the Fund at any time" from March 19, 2008 through the present. (Compl. ¶¶ 1, 36)

Rutgers alleges that the primary investment objective of the shares it purchased, as stated by the Fund, "is to provide total return through 'a combination of capital appreciation and current income,'" and that "a key aspect of the Fund's performance" is its use of financial leverage. (Compl. ¶¶ 11, 14) According to the Complaint, this "Ability to Put Leverage to Work" was "advertis[ed]" as a "Potential Advantage of Closed-Fund Investing." (Compl. ¶ 14) This leverage was provided by ARPS issued by the Fund in 2003, which Rutgers alleges provided very favorable financing that "did not ever have to be repaid." (Comp. ¶¶ 2, 13) The

2

effect of this leverage "was reflected in the Fund's regular cash distributions to common shareholders and described in the Fund's regular reports to its shareholders." (Compl. ¶ 14)

The Fund is alleged to have made public statements that the leverage afforded by ARPS "would continue indefinitely" because the term of the ARPS was "perpetual," making ARPS "a more attractive source of leverage than borrowing. . . ." (Compl. ¶¶ 2, 13(b), 14, 32) The Fund also is alleged to have represented in a 2003 prospectus that ARPS would not be redeemable by ARPS shareholders. (Compl. ¶¶ 2, 24) The Fund's public statements assertedly "indicated" to investors that this feature of "perpetual" leverage that would "continue indefinitely" was "one of the significant benefits" of an investment in Fund common shares. (Compl. ¶ 14)

Notwithstanding these representations, the "Individual Defendants" -- the Independent Trustees, Nick P. Calamos (a former Trustee) and John P. Calamos, Sr. (a Trustee and "an employee" of what the Complaint refers to as the "Calamos Sponsorship Group")[2] -- are alleged to have caused the Fund to redeem its outstanding ARPS in June 2008 and August 2009 using debt financing that was not perpetual, and ostensibly is more risky and costly than ARPS. (Compl. ¶¶ 25, 30-33, 47-48) Plaintiff contends that this action "eliminat[ed]. . .the benefits to Plaintiff and the Class of an investment as common shareholders. . . ." (Compl. ¶¶ 27, 59)

The Complaint claims that the Individual Defendants were motivated to take this action by "economic self-interests" they supposedly shared with the Calamos Sponsorship Group. (Compl. ¶¶ 20, 26) These "shared economic self-interests" ostensibly were served by providing liquidity to holders of ARPS following the February 2008 collapse of the auction market in which ARPS were purchased and sold. (Compl. ¶¶ 20, 23, 26) Plaintiff contends that the

---

[2] The Complaint defines the "Calamos Sponsorship Group" to include defendants Calamos Advisors LLC, Calamos Asset Management, Inc., and their affiliates. (Compl. ¶ 15)

3

redemption furthered the interests of the Calamos Sponsorship Group and holders of ARPS at the expense of the interests of common shareholders. (Compl. ¶¶ 3, 20, 26-27)

On August 13, 2010, Plaintiff filed an action in this Court against each of the Defendants named in this case, which was assigned Case No. 10-cv-05106. The Complaint in that action contained allegations similar to, and pleaded the same claims as, the Complaint in this case. Plaintiff voluntarily dismissed Case No. 10-cv-05106 on October 6, 2010, and then filed this action in the Circuit Court of Cook County on December 22, 2010.

Defendants timely removed the action to this Court pursuant to SLUSA on January 21, 2011.[3] On January 28, 2011, the Defendants moved to dismiss the case on the primary ground that it is precluded by SLUSA and submitted a memorandum supporting that ground of their motion. Plaintiff filed its motion to remand almost four weeks later, on February 22, 2011. A six-page memorandum accompanying Plaintiff's motion ("Pl's Memo.") cites no authority -- not a *single decision of any court* -- supporting Plaintiff's contention that this case is outside SLUSA's broad reach. To the contrary, this action is squarely within the four corners of SLUSA, and was properly removed to this Court.

## ARGUMENT

Congress enacted SLUSA in 1998 to prevent class action plaintiffs from using state law legal theories, and state court venues, to evade the heightened pleading standards and other requirements and limitations imposed in securities class actions by the Private Securities

---

[3] Two earlier filed actions, purportedly brought on behalf of a putative class of shareholders of another Calamos Fund, the Calamos Convertible Opportunities and Income Fund, are now pending before District Judge Elaine E. Bucklo and District Judge Robert M. Dow, Jr., respectively, on removal from the Circuit Court of Cook County. *Brown v. Calamos, et al.*, Case No. 10-cv-6558; *Bourrienne v. Calamos, et al.*, Case No. 10-cv-7295. The defendants in those cases have moved to dismiss under SLUSA. In *Brown*, the plaintiff has moved to remand.

Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 (the "PSLRA"). *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81-82 (2006). SLUSA added to the Securities Act of 1933, as amended (the "1933 Act"), and the Securities Exchange Act of 1934, as amended (the "1934 Act"), parallel provisions authorizing the removal and precluding the maintenance of certain class actions brought under state law.[4] As amended by SLUSA, the 1934 Act provides:

> "(1) *Class action limitations*. No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging--
>
> > (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or
> >
> > (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.
>
> (2) *Removal of covered class actions*. Any covered class action brought in any State court involving a covered security, as set forth in paragraph (1) shall be removable to federal district court for the district in which the action is pending, and shall be subject to paragraph (1)."

15 U.S.C. § 78bb(f)(1)-(2) . The parallel provision in the 1933 Act uses identical language, with the exception that it employs the phrase "untrue statement or omission of a material fact" in lieu of "misrepresentation or omission of a material fact. . . ." 15 U.S.C. § 77p (b)-(c)

The Supreme Court has emphasized that SLUSA should be given a broad construction to serve SLUSA's stated purpose of preventing the use of state law-based class actions to evade the procedural and substantive protections of the PSLRA, and has applied SLUSA even where a plaintiff's claim would not be actionable under the federal securities laws. *Dabit*, 547 U.S. at 86 (holding that SLUSA precluded an alleged state law action for breach of fiduciary duty brought on behalf of a putative class comprised of "holders" of securities, even though such persons

---

[4] For ease of reference, citations to SLUSA in this Memorandum will be to the provisions of SLUSA appearing in the 1934 Act, unless otherwise appropriate.

5

would not have had a private right of action under Section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, because they were not alleged to have purchased or sold securities during the class period).[5] Thus, although SLUSA does not preempt individual claims, or claims asserted derivatively, it altogether precludes class actions asserting claims within its scope, even where those claims could not be brought in a private federal securities action because one or more of the elements of such a cause of action is absent.

### I. PLAINTIFF CONCEDES THAT THREE OF THE FOUR CONDITIONS FOR SLUSA REMOVAL ARE SATISFIED

By its terms, SLUSA authorizes the removal of, and precludes, actions meeting four conditions. SLUSA applies where (1) the underlying suit is a "covered class action"; (2) the action is based upon state statutory or common law; (3) the action concerns a "covered security"; and (4) the case alleges either "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security," or that the defendant "used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb (f)(1), (2)

Plaintiff concedes that each of the first three conditions for SLUSA removal and preclusion is satisfied in this case. (Pl's Memo. at 2) Thus, it is uncontested that this *is* a "covered class action"; that the action *is* based upon state law; and that the case *does* concern a "covered security" (*i.e.,* Fund common shares). Plaintiff contests only whether the fourth element of SLUSA is satisfied, *i.e.*, whether the Complaint contains allegations of a

---

[5] Similarly, SLUSA applies even though a complaint contains no allegation of scienter -- a requirement in private actions under Section 10(b) of the 1934 Act and Rule 10b-5. *Anderson v. Merrill Lynch Pierce Fenner & Smith*, 521 F.3d 1278, 1285 (10th Cir. 2008); *Potter v. Janus Inv. Fund*, 483 F. Supp. 2d 692, 697 (S.D. Ill. 2007).

6

misrepresentation or omission of material fact in connection with the purchase or sale of Fund common shares. The Complaint unequivocally satisfies this requirement, as well.

## II. SLUSA'S FOURTH REQUIREMENT FOR REMOVAL IS SATISFIED

### A. <u>Plaintiff's "Disclaimer" Is Wholly Ineffective</u>

Plaintiff's first argument in support of its contention that the Complaint does not allege misrepresentations or omissions of material fact in connection with the purchase of Fund common shares is that the Complaint contains a disclaimer of any intention to assert such a claim, which Plaintiff asserts is "determinative." (Pl's Memo. at 1-2, citing Compl. ¶ 5)

The disclaimer in Paragraph 5 of the Complaint is prototypical of what has become a standard (and telltale) averment in pleadings attempting to evade SLUSA removal and preclusion. Numerous decisions hold that such disclaimers are of no effect, and should be disregarded. *See*, *e.g.*, *Kurz v. Fid. Mgmt. & Research Co.*, No. 07 C 709, 2008 WL 2397582, at *3 (S.D. Ill. June 10, 2008), *aff'd*, 556 F. 3d 639 (7th Cir. 2009) (paragraph in complaint "specifically disclaiming" any allegations of fraud, misrepresentation or omission was ineffective to avoid SLUSA preclusion); *Segal v. Fifth Third Bank*, 581 F.3d 305, 310-11 (6th Cir. 2009) ("a claimant does not have the. . .ability to disclaim the applicability of SLUSA to a complaint"); *Daniels v. Morgan Asset Mgmt., Inc.*, No. 09-cv-2800, 2010 WL 4024604, at *6 (W.D. Tenn. Sept. 30, 2010) (disregarding express disclaimer of any relief based on "an untrue statement or omission of material fact in connection with the purchase, sale, or retention of a security"); *Korsinsky v. Salomon Smith Barney, Inc.*, No. 01-cv-6058, 2002 WL 27775, at *4 (S.D.N.Y. Jan. 10, 2002) ("[a]lthough the complaint clearly states that '[t]his is not an action for fraud,' it outlines several instances of alleged misrepresentations"). In short, the first ground for Plaintiff's Motion to Remand is frivolous. At most, the presence of this argument signifies

Plaintiff's recognition that, absent an effective disclaimer, this putative class action satisfies SLUSA's requirements.

### B. Plaintiff's Avoidance Of The Terms "Misrepresentation" Or "Omission" Has No Bearing On SLUSA's Application

Plaintiff next argues that it has not alleged any misrepresentations or omissions in connection with the purchase of Fund shares. (Pl's Memo. at 3-5) Plaintiff contends that, to the contrary, it has alleged that the various public statements it attributes to the Defendants were true, or at least that it has not overtly alleged that they were untrue. (Pl's Memo. at 3, 4) This contention is just as frivolous as Plaintiff's "disclaimer" argument, for several reasons.

First, it is simply not the case that the Complaint alleges that the statements attributed to the Fund were true. No such allegation appears anywhere in the Complaint.[6]

Second, the fact that the Complaint does not expressly characterize the statements attributed to Defendants as "misrepresentations" or as untrue is of no consequence. The courts have become accustomed to attempts to evade SLUSA's application by the artful avoidance of the Act's terminology, and hold that such attempts are ineffective. *See, e.g., Kurz,* 2008 WL 2397582 at *3 (complaint that "scrupulously avoid[ed] using the words fraud, misrepresentation, or omission" was nonetheless precluded by SLUSA); *Segal,* 581 F. 3d at 310-11 (a claimant cannot "elude SLUSA's prohibitions by editing out the covered words" or using "artful pleading that removes the covered words from the complaint but leaves in the covered concepts").

---

[6] By pointing out this misstatement of the Complaint's allegations, the Defendants do not in any way concede that there was any material failure of disclosure, or any misrepresentation of material fact, as to any matter alleged in Plaintiff's Complaint. In this memorandum, and in their memoranda supporting their pending Motion to Dismiss, Defendants have confined their arguments to the allegations of the Complaint, as pleaded.

In applying SLUSA, the courts look to "the realities underlying the claims," not how the claim is cloaked in a complaint. *Romano v. Kazacos*, 609 F.3d 512, 523 (2d Cir. 2010). *See also Rabin v. JPMorgan Chase Bank, N.A.*, No. 06 C 5452, 2007 WL 2295795, *6 (N.D. Ill. Aug. 3, 2007) ("[a]ttempt by [p]laintiffs to characterize their allegations of misrepresentation and omission of material facts as claims for breach of fiduciary duty and unjust enrichment is futile"); *Felton v. Morgan Stanley Dean Witter & Co.*, 429 F. Supp. 2d 684, 692-93 (S.D.N.Y. 2006) (holding that court "must look beyond the face of the complaint to analyze the substance of the allegations made," and concluding "that [p]laintiff's claim is a securities fraud wolf dressed up in a breach of contract sheep's clothing"); *Beckett v. Mellon Investor Servs, Inc.*, No. C06-5245, 2006 WL 3249189, at *3 (W.D. Wash. Nov. 8, 2006), *aff'd in relevant part*, 329 Fed. Appx. 721 (9th Cir. 2009) (holding that although there was "no explicit reference [in the complaint] to any fraudulent activity," such as a misrepresentation or omission of material fact, "[o]ne may infer that [p]laintiff has framed the pleading in an effort to avoid SLUSA preemption"); *Stoody-Broser v. Bank of America, N.A.*, No. C08-02705, 2009 WL 2707393, at *2-3 (N.D. Cal. Aug. 25, 2009) (same).

Third, as the allegations excerpted in Paragraph 5(d) of Defendants' Notice of Removal (Exhibit A hereto) demonstrate, the substance of Plaintiff's claim is that investors or prospective investors in Fund common shares were misled as to the benefits of an investment in the shares. The premise of the Complaint is that the Defendants misled common shareholders by representing that "the holders of its [the Fund's] common stock could realize, as one of the significant benefits of this investment, leverage that would continue indefinitely, since the ARPS were perpetual," but then redeemed the ARPS and substituted assertedly less favorable financing in its place, ostensibly for the undisclosed purpose of serving their own interests and those of the Calamos Sponsorship Group. Stated differently, the Complaint alleges that the Defendants said

9

one thing, and then did another for undisclosed, allegedly improper reasons. *See Beckett*, 2006 WL 3249189, at *4 (allegation that fees charged to plaintiff were not authorized by contract "implicitly allege[d] an omission of material fact").

Plaintiff contends that its Complaint merely contains "factual assertions regarding the actions taken by the Defendants" ostensibly to further their own interests in the receipt of "fees and other revenues" supposedly resulting from the redemption and refinancing of the ARPS. (Compl. ¶ 58; Pl's Memo. at 4) But this alone -- even without consideration of Plaintiff's allegations regarding the allegedly "perpetual" and "indefinite" duration of ARPS financing -- is enough to satisfy the "misrepresentation or omission" element of SLUSA. *Daniels*, 2010 WL 4024604, at *9 (rejecting argument that claim was based on "what. . .the defendants *did*," rather than on the defendants' disclosures, observing that the defendants' "undisclosed conflict of interest is precisely what Plaintiffs argue caused Defendants to do what they 'did' "). Moreover, claims "for excessive fees caused by. . .investments. . .have been universally found to be preempted by SLUSA." *Stoody-Broser v. Bank of America, N.A.*, 2009 WL 2707393, at *4. *See also Beckett*, 2006 WL 3249189, at *4 (a "request for recovery of allegedly unlawfully obtained fees and charges. . .[on the]. . .sale of securities is subject to SLUSA preemption").

In short, the Complaint presents a paradigm case for application of SLUSA. *Rabin*, 2007 WL 2295795, at *6 (analyzing the substance of allegations of breach of fiduciary duty and unjust enrichment asserted by trust beneficiaries, the court found "that at the heart of the Amended Complaint is that Defendants misrepresented and omitted material facts related to the purchase of" shares in the trustee's proprietary mutual fund). *See also In re Mut. Funds Inv. Litig.*, 309 Fed. Appx. 722, 725 (4th Cir. 2009) ("[d]espite their emphatic disavowal of their prior explicit allegations of misrepresentation. . .at bottom the plaintiffs simply allege" a misrepresentation claim precluded by SLUSA); *Kutten v. Bank of America, N.A.*, 530 F.3d 669, 670-71 (8th Cir.

2008) (holding, in a case where the complaint did not allege omissions of fact or misrepresentations made to plaintiffs, that "SLUSA preemption is based upon the conduct alleged, not the words used to describe the conduct").[7]

The analysis applied in *Kircher v. Putnam Funds Trust*, 398 Ill. App. 3d 664, 922 N.E.2d 1164, 337 Ill. Dec. 587 (5th Dist. 2010), is particularly instructive in light of Rutgers' allegation that Defendants benefitted one class of shareholders (those who owned ARPS) at the expense of another (those who owned common shares of the Fund). In *Kircher*, a putative class of mutual fund shareholders alleged claims sounding in negligence and breach of fiduciary duty arising out of short-term trading or "market timing" in shares of the fund. 398 Ill. App. 3d at 667-68, 922 N.E.2d at 1167, 337 Ill. Dec. at 590. The plaintiffs alleged that although the defendants operated a mutual fund with the stated goal of providing capital growth to long-term investors, they followed portfolio valuation procedures which benefited short-term traders at the expense of long-term shareholders. *Id.* The plaintiffs argued that SLUSA did not apply because their claims did not sound in misrepresentation or fraud. *Id.* at 670, 922 N.E.2d at 1169-70, 337 Ill. Dec. at 592-93. The court disagreed, holding that "the plaintiffs' allegations are based, at least implicitly, on the defendants' failure to disclose. . .their method of calculating. . .[net asset value]. . .and the fact that this method has a potential to reward market-timing investors at the expense of long-term investors." *Id*. at 673-74, 922 N.E.2d at 1171-72, 337 Ill. Dec. at 594-95.

---

[7] Plaintiff's Memorandum attempts to minimize the significance of the Complaint's allegations regarding the Fund's public statements by dismissing them as "simply a statement of fact" or "pertain[ing] simply to statements of information made publicly by the Fund. . . ." (Pl's Memo. at 3, 4) The courts have rejected similar attempts to evade SLUSA by characterizing misrepresentations as mere background facts; it is of no consequence that allegations of misrepresentation are not material to the state law claims asserted in a complaint. *See, e.g., Segal*, 581 F. 3d at 311 (contention that "the state-law claims do not depend upon allegations of misrepresentation or manipulation -- and thus are not material to them" was unavailing).

The court concluded that the complaint at bottom alleged a claim for misrepresentation or omission of material fact, noting that if the defendants had disclosed the risks and potential impact of market timing, there could be no claim for negligence or breach of duty. *Id*.

The same reasoning applies here. Plaintiff's Complaint alleges that "[t]he Fund's public statements indicated that the holders of its common stock could realize, as one of the significant benefits of this investment, leverage that would continue indefinitely, since the ARPS were perpetual." (Compl. ¶ 14) Plaintiff complains that contrary to the Fund's representations about these and other benefits of ARPS, the Individual Defendants caused the Fund to redeem the ARPS using more costly and comparatively short-term replacement borrowing, thereby "eliminating one of the major benefits of the investment." (Compl. ¶¶ 2, 13, 14, 27, 31-33, 47) These allegations necessarily assume a purported failure to disclose that the ARPS might be, or would be, replaced with shorter term and/or higher cost leverage, since if such a disclosure had been made, no claim could exist. *Stoody-Broser*, 2009 WL 2707393, at *4 (purported breach of fiduciary claims asserted against trustee of assets invested in affiliated mutual funds inherently involved a failure of disclosure). Consequently, the Complaint asserts claims for the misrepresentation or omission of material facts within the meaning of SLUSA.

### C. SLUSA's "In Connection With" Requirement Also Is Met

The Complaint easily satisfies the requirement of SLUSA that a misrepresentation or omission of material fact be "in connection with" the purchase or sale of a covered security. The Supreme Court has construed the "in connection with" requirement broadly, holding that "it is enough that the fraud alleged 'coincide' with a securities transaction -- whether by the plaintiff or by someone else." *Dabit*, 547 U.S. at 85, 89. That unquestionably is the case alleged here, where the Complaint asserts that the Fund filed SEC reports and made public pronouncements

12

concerning the allegedly "perpetual" nature of ARPS financing that was "a significant benefit[ ] of. . .[an]. . .investment" in the Fund's common shares. (Compl. ¶¶ 2, 13, 14, 27, 31-33, 47)

Plaintiff attempts to avert SLUSA preclusion by defining a class consisting of "beneficial owners," rather than purchasers or sellers, of the Fund's common shares. (Compl. ¶ 36; Pl's Memo. at 5) As noted *supra* at 5-6, the Supreme Court squarely rejected such an attempted end-run around SLUSA in *Dabit*, holding that "[f]or purposes of SLUSA pre-emption, that distinction [between 'holders' and purchasers or sellers of securities] is irrelevant; the identity of the plaintiffs does not determine whether the complaint alleges fraud 'in connection with the purchase or sale' of securities." *Dabit*, 547 U.S. at 89. Under *Dabit*, the inquiry focuses on defendant's conduct, rather than the identity of the plaintiff. *Rabin*, 2007 WL 2295795, at *7.

The same principle disposes of Plaintiff's apparent contention that the "in connection with" requirement of SLUSA is not met because the Complaint does not "tie[ ] any misstatement, omission or manipulation to the purchase or sale of a security" by Plaintiff or other members of the putative class. (Pl's Memo. at 5) *Dabit* makes clear that SLUSA applies even when *neither* the named plaintiff, *nor* any member of a putative class, was a purchaser or seller of securities at the time alleged misrepresentations were made, and thus precludes claims even when no private right of action would exist under the federal securities laws. *Dabit*, 547 U.S. at 74.[8] In *Dabit*, the Supreme Court made clear that SLUSA's "in connection with" requirement is met where there is "deception 'in connection with the purchase or sale of any security,' not deception of an identifiable purchaser or seller." *Id*. at 85, citing *United States v. O'Hagan*, 521

---

[8] As the Seventh Circuit observed in *Kircher v. Putnam Funds Trust*, 403 F.3d 478, 484 (2005), *rev'd on other grounds*, 547 U.S. 633 (2006), SLUSA's "preemptive effect is not confined to knocking out state-law claims by investors who have *winning* federal claims, as plaintiffs suppose. It covers both good and bad securities claims -- *especially* bad ones."

13

U.S. 642, 658 (1997) (internal quotation omitted). Consequently, it is irrelevant that the Complaint does not "tie[]" Rutgers' purchase, or that of any member of the putative class, to any particular alleged misstatement. *U.S. Mortgage, Inc. v. Saxton*, 494 F.3d 833 (9th Cir. 2007) (contention that SLUSA did not apply because plaintiffs did not purchase or sell securities in response to alleged misrepresentations was "the very argument that *Dabit* rejected").

### III. PLAINTIFF'S ARGUMENT CONCERNING THE CLASS ACTION FAIRNESS ACT OF 2005 ("CAFA") IS INAPPOSITE

It is unclear why Plaintiff has raised the application of CAFA to this action. The Defendants do not rely on CAFA to establish jurisdiction in this Court,[9] nor are the exclusions from CAFA exceptions to SLUSA preclusion. (Indeed, one of the categories of cases excluded from CAFA is class actions *within* the scope of SLUSA. 28 U.S.C. § 1332(d)(9)(A).) Thus, CAFA is inapposite to Plaintiff's Motion, and to the case as a whole. What *is* of consequence is that Plaintiff does not contend that any of the exceptions to *SLUSA* preclusion (addressed at pages 13-17 of the Joint Memorandum in Support of the Fund Defendants' and the Calamos Defendants' Motion to Dismiss Pursuant to SLUSA, filed February 1, 2011) apply here.

### CONCLUSION

The Complaint in this case is a paradigm of the kind of action that SLUSA was enacted to address. It is a Complaint which, prior to the adoption of the PSLRA, undoubtedly would have been brought under the federal securities laws, and which now masquerades in state law costume only to avoid the requirements and strictures of the PSLRA. SLUSA squarely applies

---

[9] Although the *Defendants* have not relied upon CAFA jurisdiction as a basis for removal, *Plaintiff* relied upon CAFA when it elected to file the predecessor of this case in this Court -- an election which survives in vestigial form in the heading of the caption to the Complaint filed by the Plaintiff in Cook County Circuit Court. *See* Exhibit A to Plaintiff's Motion to Remand at 1.

to, and authorizes the removal of, this purported class action. Plaintiff's motion to remand this case therefore should be denied, and the Complaint dismissed.

| | |
|---|---|
| Dated: March 4, 2011 | Respectfully submitted, |
| | Weston W. Marsh, Joe F. Hanauer, John E. Neal, William R. Rybak, Stephen B. Timbers, David D. Tripple and Calamos Convertible and High Income Fund |
| John W. Rotunno<br>Paul J. Walsen<br>Molly K. McGinley<br>K&L GATES LLP<br>70 West Madison Street, Suite 3100<br>Chicago, Illinois 60602<br>Telephone: 312.372.1121<br>Facsimile: 312.345.9060 | By:     /s/ John W. Rotunno<br>          One of their attorneys |
| | Defendants John P. Calamos, Sr., Nick P. Calamos, Calamos Advisors LLC, and Calamos Asset Management, Inc. |
| Christian J. Mixter (*pro hac vice*)<br>Patrick D. Conner (*pro hac vice*)<br>MORGAN, LEWIS & BOCKIUS LLP<br>1111 Pennsylvania Avenue, NW<br>Washington, DC 20004-2541<br>Telephone: 202.739.3000<br>Facsimile: 202.739.3001 | By:     /s/ Christian J. Mixter<br>          One of their attorneys |
| Kevin B. Dreher<br>Michael F. Derksen<br>MORGAN, LEWIS & BOCKIUS LLP<br>77 West Wacker Drive<br>Chicago, Illinois 60601-5094<br>Telephone: 312.324.1000<br>Facsimile: 312.324.1001 | |

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that he caused the foregoing *Joint Response of Fund Defendants and Calamos Defendants In Opposition to Motion to Remand* and the Exhibit thereto to be served automatically via CM/ECF to the following counsel of record:

Marc I Gross
Murielle J. Steven
Jeremy A. Lieberman
Pomerantz, Haudek, Grossman & Gross LLP
100 Park Avenue, 26th Floor
New York, New York 10017
Telephone: 212-661-1100
Facsimile: 212-661-8665
migross@pomlaw.com
mjsteven@pomlaw.com
jalieberman@pomlaw.com

Patrick V. Dahlstrom
Pomerantz, Haudek, Grossman & Gross LLP
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: 312-377-1181
Facsimile: 312-377-1184
pvdahlstrom@pomlaw.com

                                                           /s/ John W. Rotunno
                                                            John W. Rotunno