## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| RUTGERS CASUALTY INSURANCE COMPANY, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>JOHN P. CALAMOS, SR., Trustee of the Calamos Convertible and High Income Fund, NICK P. CALAMOS, former Trustee of the Calamos Convertible and High Income Fund, WESTON W. MARSH, Trustee of the Calamos Convertible and High Income Fund, JOE F. HANAUER, former Trustee of the Calamos Convertible and High Income Fund, JOHN E. NEAL, Trustee of the Calamos Convertible and High Income Fund, WILLIAM R. RYBAK, Trustee of the Calamos Convertible and High Income Fund, STEPHEN B. TIMBERS, Trustee of the Calamos Convertible and High Income Fund, DAVID D. TRIPPLE, Trustee of the Calamos Convertible and High Income Fund, CALAMOS ADVISORS, LLC, an investment advisor and Delaware limited liability company, CALAMOS ASSET MANAGEMENT, INC, a Delaware corporation and publicly held holding company, CALAMOS CONVERTIBLE AND HIGH INCOME FUND, and JOHN AND JANE DOES 1-100,<br><br>　　　　　　　　　　　　Defendants. | Case No. 1:11-cv-00462<br><br>U.S. District Judge Edmond E. Chang |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION
## TO DEFENDANTS' JOINT MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 4

    I.    SLUSA Does Not Apply ......................................................................................... 4

          A.    The Complaint Does Not Allege Any "Untrue Statement"
               or Omission of A Material Fact. ................................................................ 4

          B.    The "In Connection With" Requirement of SLUSA Has
               Not Been Met. ......................................................................................... 10

          C.    The Complaint Falls Under SLUSA's "Exclusively
               Derivative" Exemption. ......................................................................... 12

    II.    The Court Should Uphold Plaintiff's Claim for Breach of Fiduciary Duty. ..................... 13

          A.    The Complaint Properly Pleads Demand Futility. .................................. 13

          B.    The Complaint Properly Alleges That The Individual Defendants
               Breached Their Fiduciary Duties. ........................................................... 14

          C.    The Business Judgment Rule Does Not Protect The Fund
               Defendants. ............................................................................................ 18

    III.    The Complaint Sufficiently Alleges That The Calamos Defendants Aided
          And Abetted The Individual Defendants' Breach of Fiduciary Duties. ........................... 20

    IV.    The Complaint Adequately States A Claim For Unjust Enrichment. ............................... 21

    V.    CONCLUSION ..................................................................................................... 22

# **TABLE OF AUTHORITIES**

**Page(s)**

## CASES

*Aronson v. Lewis*,
  473 A.2d 805 (Del. 1984) ........................................................................14, 18

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) ..........................................................................18

*Baron v. Chrans*,
  2008 U.S. Dist. LEXIS 56727 (C.D. Ill. 2008)..................................................18

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................18, 20

*Cheatham v. Ky. Lottery Corp.*,
  2008 U.S. Dist. LEXIS 1391 (W.D. Ky. 2008) ...................................................4

*Ferris Elevator Co., Inc. v. Neffco, Inc.*,
  285 Ill. App. 3d 350 (Ill. App. Ct. 3d Dist. 1996)............................................18

*Gantchev v. Predicto Mobile, LLC*,
  2009 U.S. Dist. LEXIS 85898 (N.D. Ill. 2009) ................................................21

*Gavin v. AT&T Corp.*,
  464 F.3d 634 (7th Cir. 2006) .................................................................12

*Hare v. Custable*,
  2009 U.S. Dist. LEXIS 77653 (N.D. Ill. 2009) ................................................13

*Hefferman v. Bass*,
  467 F.3d 596 (7th Cir. 2006) .................................................................20

*In re Abbott Labs. Derivative S'Holders Litig.*,
  325 F.3d 795 (7th Cir. 2003) .................................................................14

*In re Charles Schwab Corp. Sec. Litig.*,
  257 F.R.D. 534 (N.D. Cal. 2009)............................................................6, 7

*In re Columbia Entities Litigation*,
  2005 U.S. Dist. LEXIS 33439 (D. Mass. 2005) ................................................13

*Janowiak v. Tiesi*,
  402 Ill. App. 3d 997 (Ill. App. Ct. 1st Dist. 2010)............................................16

*Kennedy v. Venrock Assocs.*,
 348 F.3d 584 (7th Cir. 2003) ......................................................................13

*Kircher v. Putnam Funds Trust*,
 398 Ill. App. 3d 664 (Ill. App. Ct. 5th Dist. 2010) ...........................................8

*Kirschner v. Bennett*,
 2010 U.S. Dist. LEXIS 132344 (S.D.N.Y. 2010) ............................................12

*Kopecky v. RJM Invs.*,
 2009 U.S. Dist. LEXIS 76009 (N.D. Ill. 2009) ...............................................21

*Kurz v. Fid. Mgmt. & Research, Co.*,
 2007 U.S. Dist. LEXIS 80127 (S.D. Ill. 2008),
 *aff'd*, 556 F. 3d 639 (7th Cir. 2009) ............................................................10

*LaSala v. Bank of Cyprus Public Co. Ltd.*,
 510 F. Supp. 2d 246 (S.D.N.Y.2007).............................................................11

*LaSala v. Bordier et Cie*,
 519 F.3d 121 (3d Cir. 2008).............................................................................7

*MDCM Holdings, Inc. v. Credit Suisse First Boston, Corp.*,
 216 F. Supp. 2d 251 (S.D.N.Y. 2002)..........................................................5, 6

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
 547 U.S. 71 (U.S. 2006).............................................................................10, 11

*Norman v. Salomon Smith Barney*, Inc.,
 350 F. Supp. 2d 382, 386 (S.D.N.Y. 2004).............................................5, 7, 11

*Orman v. Cullman*,
 794 A.2d 5 (Del. Ch. 2002).............................................................................18

*Paru v. Mut. of Am. Life Ins. Co.*,
 2006 U.S. Dist. LEXIS 28125 (S.D.N.Y. 2006).............................................4, 5

*Prestwick Capital Mgmt. Ltd. v. Peregrine Fin. Group, Inc.*,
 2010 U.S. Dist. LEXIS 120148 (N.D. Ill. 2010) .............................................20

*Prodromos v. Everen Secs., Inc.*,
 389 Ill. App. 3d 157 (Ill. App. Ct. 2009) ......................................................15

*Rabin v. JP Morgan Chase Bank, N.A.*,
 2007 U.S. Dist. LEXIS 57437 (N.D. Ill. 2007) ................................................9

*Romano v. Kazacos*,
 609 F.3d 512 (2d Cir. 2010)..........................................................................8, 9

iii

*Schnitzer v. O'Connor*,
274 Ill. App. 3d 314 (Ill. App. Ct. 1995) ........................................13

*Seidel v. Byron*,
405 B.R. 277 (N.D. Ill. 2009) ........................................18

*Sequel Capital, LLC v. Pearson*,
2010 U.S. Dist. LEXIS 104554 (N.D. Ill. 2010) ........................14, 15, 16

*Shirley v. JED Capital, LLC*,
724 F. Supp. 2d 904 (N.D. Ill. 2010) ........................................13

*Stamp v. Touche Ross & Co.*,
636 N.E.2d 616 (Ill. App. Ct. 1st Dist. 1993) ........................................18

*Tamayo v. Blagojevich*,
526 F.3d 1074 (7th Cir. 2008) ........................................15, 18

*Thornwood, Inc. v. Jenner & Block*,
799 N.E.2d 756 (Ill. App. 2003) ........................................20

*Treco, Inc. v. Land of Lincoln Sav. and Loan*,
749 F.2d 374 (7th Cir. 1984) ........................................18

*Xpedior Creditor Trust v. Credit Suisse First Boston (USA), Inc.*,
341 F. Supp. 2d 258 (S.D.N.Y. 2004) ........................................5, 8

## STATUTES

15 U.S.C. § 77p(b) ........................................4

15 U.S.C. § 77p(d)(2)(f)(2)(B) ........................................12

15 U.S.C. § 78bb(f) ........................................4

## RULES

Fed. R. Civ. P. 23.1 ........................................13

## OTHER AUTHORITIES

Del. Code Ann. Tit. 12, § 3806(e) ........................................17

805 Ill. Comp. Stat. 5/7.80(b) (1999) ........................................13

760 Ill. Comp. Stat. 65/1(1) ........................................16

Plaintiff respectfully submits this memorandum in opposition to the Joint Memorandum in Support of the Fund Defendants' and the Calamos Defendants' Motion to Dismiss Pursuant to SLUSA" ("Joint Mem."), the Fund Defendants' Supplemental Memorandum in Support of Joint Motion to Dismiss ("Fund Mem."), and the Calamos Defendants' Supplemental Memorandum In Support of Joint Motion To Dismiss ("Calamos Mem.").[1]

## **INTRODUCTION**

The Securities Litigation Uniform Standards Act ("SLUSA") can only preempt state law causes of action that are based on misrepresentations or material omissions. Here, the Complaint[2] alleges three state law causes of action – breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and unjust enrichment.[3] None of these claims allege or depend upon misrepresentations or material omissions. Rather, each arises solely from the Fund Defendants' and Calamos Defendants' (collectively the "Defendants")[4] inexplicable decision to redeem over 80% of Auction Rate Preferred Securities ("ARPS") – a highly advantageous form of financing for the Calamos Convertible and High Income Fund (the "Fund") and its shareholders – during the auction market freeze of 2008, when they had no legal obligation to do so, thereby irreparably damaging the existing common shareholders' investments in the Fund.

The Complaint further alleges that Defendants' decision to redeem the ARPS was not driven by valid business judgment, but rather, by their own economic self-interests. Specifically,

---

[1] Plaintiff's Motion to Remand this case to the Circuit Court is currently pending before this Court as well.

[2] The Complaint was filed in Cook County Circuit Court on December 22, 2010. All "Cpt. ¶ __" references are to the filed Complaint, unless otherwise indicated.

[3] The breach of fiduciary duty claim is brought against the Individual Defendants, all but one of whom were Trustees of the Fund during the relevant period. Cpt. at 19; see also Cpt. ¶ 7 (listing the Individual Defendants). Defendant Nick P. Calamos had resigned as a Trustee in 2006, but was a Vice President during the relevant period. The aiding and abetting claim is brought against the Fund itself, as well as Calamos Advisors LLC and Calamos Asset Management, Inc. (the "Calamos Defendants"). The unjust enrichment claim is asserted against the Calamos Defendants as well.

[4] In order to avoid any confusion on the Court's part, Plaintiff refers the Court to the Calamos Mem. at 1 n.1, which Defendants descriptions of the various Defendants for their briefing.

it alleges that, in addition to the Fund at issue here, Defendants served in similar capacities for a whole group of "Sister Calamos Funds," to which they owed distinct fiduciary duties, and reaped significant management fees for each new fund that they were able to create. Significantly, Defendants' ability to distribute each fund heavily depended on the investment banks and brokers who sold the funds, as well as the ARPS at issue, to investors. Cpt. ¶16.

Thus, when the auction rate market froze in 2008, and the investment banks' customers complained about their inability to sell the illiquid ARPS they had purchased, the investment banks pressured Defendants to redeem the ARPS and get their clients out of these securities. Defendants' choice should have been simple – legally, they had no obligation to buy back the ARPS, but they did have a fiduciary duty to refrain from taking any action detrimental to the Fund and its common shareholders. Defendants' redemption of the ARPS would hurt the Fund and its common shareholders, since the ARPS were a significantly advantageous form of financing for the Fund, and the replacement alternatives were significantly inferior to the ARPS. The Defendants thus had a fiduciary obligation to maintain the status quo. However, because the Defendants relied so heavily on these very banks and brokers in order to sell additional funds – and thereby earn more management fees for themselves – they decided to placate the banks and brokers and redeem the ARPS.

None of these allegations implicate any misstatements or omissions concerning the ARPS. Defendants' mischaracterization of the claims as depending on Defendants' supposed "misstatements" regarding the perpetual nature of the ARPS is a red herring. Plaintiffs never claimed that these statements were false when made, which is a prerequisite for any fraud claim to proceed. In fact, the claims are not based on statements at all but on actions. Redeeming the

ARPS benefitted numerous others, but not the common shareholders to whom the Defendants owed fiduciary duties. It is this significant distinction that renders SLUSA inapplicable.

Similarly, the fact that Defendants' conflict of interest in redeeming the ARPS was undisclosed is not the basis for any claims alleged. It is the *existence* of these conflicts at all that serves as the basis for the claims. In other words, the asserted claims would still stand even if Defendants had disclosed that they stood to reap benefits from the redemption of the ARPS at shareholders' expense.

In any event, even if the Complaint had alleged misrepresentations or material omissions, SLUSA still would not apply because, by Defendants' own concession, the claims asserted are derivative in nature and are thus exempt from SLUSA preemption. Joint Mem. at 14. Despite this concession, Defendants protest that the complaint is not "exclusively derivative" in nature because it is technically "styled" as a class action. This argument elevates form over substance, and ignores settled case law dictating that a case is considered "derivative" in nature when the damages claimed are derivative in nature. Due to SLUSA's inapplicability here, this case is not properly before this Court and the remainder of Defendants' arguments should not be considered.[5]

Defendants' alternative argument, that even if the claims are deemed derivative in nature, the case should be dismissed for failure to make a demand on the Board of Trustees of the Fund, is also unavailing. Under Illinois law, a case may proceed derivatively so long as Plaintiff has

---

[5] On March 14, 2011, the Honorable Judge Elaine E. Bucklo granted defendants' motion to dismiss in *Brown v. Calamos,* No. 10 cv 6558. That decision should have no bearing here. First, it does not appear that the *Brown* plaintiff opposed the defendant's motion to dismiss in that case. The plaintiff had only moved to remand the case to State court. The Court thus looked to the *Brown* plaintiff's motion for remand, and found that plaintiff failed to cite authority supporting its contention that SLUSA did not apply. ("Most telling of all, perhaps, is the striking absence of *any* authority in which claims such as those plaintiff asserts were allowed to proceed under state law. Indeed, plaintiff's eight page memorandum in support of its motion for remand cites not a single case from any court.") Op. at 10. By contrast, Plaintiff here has cited ample law showing that SLUSA is inapplicable, that Defendants' Motion to Dismiss should be denied in its entirety, and Plaintiff's Motion to Remand should be granted.

3

adequately alleged that demand would have been futile. Here, Plaintiff has demonstrated that demand in this case is futile because, as detailed herein, the Board already rejected a demand made by shareholders regarding these very allegations. *Id.* at ¶¶42-43. It is therefore evident that any demand served by Plaintiff would have been similarly rejected.

Defendants are additionally wrong in their contention that the Court should decide at the pleading stage that their actions are protected by the "business judgment rule." As detailed further herein, because the Complaint clearly alleges facts transporting Defendants' actions outside the realm of protected business judgment and into the mire of unprotected bad faith decisions, the Court should permit the claim for breach of fiduciary duty to proceed.

## ARGUMENT

### I.    SLUSA Does Not Apply.

#### A.    The Complaint Does Not Allege Any "Untrue Statement" or Omission of A Material Fact.[6]

SLUSA's scope is "not unlimited" – the statute only applies where the claims clearly involve misrepresentations or omissions. *Cheatham v. Ky. Lottery Corp.*, 2008 U.S. Dist. LEXIS 1391 (W.D. Ky. 2008) (internal citation omitted); 15 U.S.C. §§ 77p(b), 78bb(f). Defendants' motion to dismiss is nothing more than an attempt to fit a square peg into a round hole. The Complaint does not allege any misrepresentations or material omissions, and Defendants cannot simply reframe the Complaint in an attempt to trigger SLUSA. *See Paru v. Mut. of Am. Life Ins. Co.*, 2006 U.S. Dist. LEXIS 28125, at *9 (S.D.N.Y. 2006) ("[D]efendant may not recast plaintiff's Complaint as a securities fraud class action so as to have it preempted by SLUSA)

---

[6] SLUSA preemption applies only when (i) the suit is a "covered class action;" (ii) based upon state law or common law; (iii) the action involves a "covered security" and; (iv) the action alleges "an untrue statement or omission of a material fact in connection with the sale or purchase of a covered security." 15 U.S.C. §§ 77p(b), 78bb(f). In arguing the inapplicability of the fourth SLUSA prong, Plaintiff does not concede the applicability of prongs one through three. In any event, all four SLUSA requirements must be met to trigger preemption. As the facts of this case clearly do not fall within the ambit of SLUSA's fourth prong, there is no preemption.

(internal citation omitted"); *MDCM Holdings, Inc. V. Credit Suisse First Boston, Corp.*, 216 F. Supp. 2d 251, 257 n.12 (S.D.N.Y. 2002).

This is a case where Defendants breached their fiduciary duties by unnecessarily causing the redemption of the ARPS, thereby harming shareholders, while others were unjustly enriched. Their public statements, none of which are alleged to be false, are irrelevant to the state law claims alleged. Courts have consistently rejected attempts to apply SLUSA in cases involving purely state law claims where no misrepresentations are alleged. *Paru*, 2006 U.S. Dist. LEXIS 28125, *14 ("Even looking beyond the face of the Complaint to the substance of plaintiff's allegations, it is clear that plaintiff's claim is not based, either explicitly or implicitly, on any misstatements or omissions. Therefore, plaintiff's state law breach of fiduciary duty claim is not preempted by SLUSA."); *Norman v. Salomon Smith Barney*, Inc., 350 F. Supp. 2d 382, 386 (S.D.N.Y. 2004) ("The claims at issue are for breach of contract and breach of fiduciary duty, neither of which has fraud or misrepresentation as an element."); *Xpedior Creditor Trust v. Credit Suisse First Boston (USA), Inc.*, 341 F. Supp. 2d 258, 261 (S.D.N.Y. 2004) ("Because neither misrepresentations nor a scheme to defraud are a necessary component of plaintiff's claims, the preemption motion is denied."); *MDCM Holdings Inc.*, 216 F. Supp. 2d at 257 n.12 (noting that facts underlying a complaint may give rise to multiple possible allegations, but "because the determination of whether SLUSA applies may only be made by reference to what a party has alleged, and not what it *could* have alleged, courts should be wary of a defendant's attempts to recast the plaintiff's complaint as a securities lawsuit in order to have it pre-empted by SLUSA**.**").

Misrepresentations do not factor into the allegations of the Complaint whatsoever. For example, neither party disputes that the ARPS were perpetual, that they "represented quite

favorable financing for the Fund's common shareholders," or that they provided "a more attractive source of leverage than borrowing." Cpt. ¶¶ 2, 13, 14, 32. In fact, it is the *truth* of these statements that rendered Defendants' misconduct so egregious. Defendants inexplicably chose to replace "a more attractive source of leverage" with less advantageous financing for no identifiable reason other than their own pecuniary gain. Indeed, the Fund was not legally obligated to redeem ARPS, nor did the auction failures materially adversely affect the Fund's rights and obligations with respect to the ARPS. Cpt. ¶ 24. Nor does the Complaint allege at any point that Defendants failed to inform shareholders that they were redeeming the ARPS and obtaining alternative financing. In fact, none of the statements included in the Complaint were alleged to be false or misleading in any way. Defendants cannot change the true nature of the claims asserted by arbitrarily relabeling allegations as "misrepresentations" of fact. *MDCM Holdings, Inc.*, 216 F. Supp. 2d at 257 n.12.

*In re Charles Schwab Corp. Sec. Litig.,* is particularly on point. 257 F.R.D. 534 (N.D. Cal. 2009). In that case, the plaintiffs alleged both violations of state law and federal securities laws. The court found that the state claims, however, were not contingent upon any misrepresentations or omissions and that they arose from an unauthorized change in the fund's concentration policy:

> …which expressly limited concentration to 25 percent of assets in any single "industry." Plaintiff alleges that the violations occurred when the fund changed its concentration policy by ceasing to define mortgage-backed securities as an "industry," without a shareholder vote, thereby permitting the fund to invest far more than 25 percent of its assets in mortgage-backed securities and other such assets...[P]laintiffs readily agree that Schwab properly disclosed the change in its concentration policy but argue that the change was nevertheless improper.

*Id*. at 551. Similar to Defendants' attempt here, the *Schwab* defendants attempted to mischaracterize statements in the complaint that the fund is an "ultra-short bond fund" and

statements regarding the portfolio's duration as triggering SLUSA. The court however, saw through defendants' ill-fated attempts and concluded:

> True, those allegations are incorporated by reference into the state claims but are really irrelevant thereto. When applying SLUSA, courts ignore extraneous allegations and focus on the gravamen of the complaint: "when an allegation of misrepresentation in connection with a securities trade, implicit or explicit, operates as a factual predicate to a legal claim, that ingredient is met. To be a factual predicate, *the fact of a misrepresentation must be one that gives rise to liability, not merely an extraneous detail*." *LaSala v. Bordier et Cie*, 519 F.3d 121, 141 (3d Cir. 2008). Because the state claims are not predicated upon a misrepresentation in connection with a securities transaction, those claims are not preempted.

*Id*. (emphasis supplied).

*Norman v. Salomon Smith Barney Inc.* is also instructive. 350 F. Supp. 2d 382 (S.D.N.Y. 2004). There, the plaintiffs were customers who had employed the defendant for individual investment management services, and sued for breach of contract and breach of fiduciary duties on the grounds that the defendant did not reveal that its research analysts' recommendations were tainted by conflicts of interest. Judge Lynch found that "regardless of the factual merits of these claims, they are not securities fraud claims, nor claims that depend on establishing material misrepresentations or omissions in connection with the purchase or sale of securities, within the meaning of SLUSA." *Id*. at 387. The *Norman* case effectively illustrates the outer boundary of SLUSA's reach. Similarly, here, the Complaint does not assert securities law claims, or any misrepresentations or omissions of material fact. For instance, the Complaint alleges that the Individual Defendants, suffering from conflicts of interest, breached their fiduciary duties by needlessly replacing favorable financing with far less advantageous financing for no cognizable reason other than to gain personal benefit. In fact, even if the Complaint could be read to give rise to a claim of fraud, courts have held that this "does not mean that the complaint *must be read*

as alleging fraud." *Xpedior Creditor Trust*, 341 F. Supp. 2d at 268. As the *Xpedior* court

explained:

> To the contrary, a plaintiff is ordinarily free to choose the legal theories upon
> which she relies and to discard others. "Where the plaintiff's claim might be
> brought under either federal or state law, the plaintiff is normally free to ignore
> the federal question and rest his claim solely on the state ground." The choice of
> legal theories is a strategic choice to be made by plaintiff, and neither the court
> nor the defendant is permitted to override that choice.

Defendants' reliance on *Kircher v. Putnam Funds Trust* is inapposite. 398 Ill. App. 3d

664 (Ill. App. Ct. 5th Dist. 2010). *Kircher* involved short-term trading and market timing

practices that benefitted certain shareholders at the expense of other shareholders. The court

applied SLUSA because:

> the plaintiffs' allegations are based, at least implicitly, on the defendants' *failure
> to disclose* to the plaintiffs their method of calculating the NAV and the fact that
> this method has a potential to reward market-timing investors at the expense of
> long-term investors. If the defendants had disclosed to the plaintiffs the fact that
> mutual fund shares are valued only once a day and that this once-a-day valuation
> creates opportunities for market-timing arbitrage, or if the defendants had stated
> in their prospectuses or otherwise disclosed to investors that a daily valuation left
> the defendants' funds exposed to short-swing trading strategies, the plaintiffs
> would be unable to claim that the negligent or willful and wanton valuation of the
> funds caused them damage.

*Id*. at 673. (emphasis added). As Defendants concede, if the defendants in *Kircher* "had

disclosed the risks and potential impact of market timing, there could be no claim for negligence

or breach of duty." *Id*.; Joint Mem. at 10. In stark contrast, the claims here do not involve any

alleged material omissions. The Complaint does not assert that Defendants breached their

fiduciary duties by making false statements about the ARPS redemption or anything at all. The

Complaint makes clear that Defendants breached their fiduciary duties because they were under

no obligation to redeem the ARPS, but did so anyway to the detriment of their shareholders.

As Defendants recognize, "the realities underlying the claims" determine SLUSA's

applicability. Joint Mem. at 9. Defendants rely on *Romano v. Kazacos* in support of their

contention that SLUSA applies, but the facts of that case are completely distinguishable. 609 F.3d 512 (2d Cir. 2010). There, the complaint at issue explicitly alleged that defendants made "uniform misrepresentations" to appellants about whether they could afford to retire early without depleting their investment accounts, and to have "misrepresented or concealed material facts that they knew, or should have known, would show that their pre-retirement communications with Plaintiffs had been false, incorrect, or misleading." *Id.* at 521. The amended complaints also contained explicit allegations of material omissions. The Complaint here contains no such allegations and is therefore entirely distinct. Defendants' reliance on *Rabin v. JP Morgan Chase Bank, N.A.* is equally misplaced. There, unlike here, "Plaintiffs…plead[ed] the state law claims of breach of fiduciary duty and unjust enrichment *as an alternative to* its federal securities claims." 2007 U.S. Dist. LEXIS 57437, *16 (N.D. Ill. 2007) (emphasis added). The complaint in *Rabin* primarily alleged federal securities law claims which clearly invoked the existence of misrepresentations and omissions, and was rife with phrases like "omitted material facts." *Id.* at *18. The Complaint here alleges no false statements or omissions of material fact.

The Complaint does not allege that Defendants breached their fiduciary duties by redeeming the ARPS because they had in any way represented that they would not do so. In fact, the Calamos Convertible and High Income Fund Prospectus filed with the SEC on July 29, 2003 ("Prospectus"), states that the *Fund* can redeem the ARPS; the ARPS were only unredeemable as to the Fund *shareholders.* The gravamen of this action is that Defendants breached their fiduciary duties in causing the redemption of those ARPS because they did so to the detriment of shareholders without valid justification. Defendants never represented that they could not or

would not replace the ARPS with other financing.  However, they had a clear fiduciary duty not to take unnecessary action that could harm the Fund or its shareholders.

In light of the clear nature of the state law causes of action articulated in the Complaint, the inclusion of an unambiguous disclaimer was wholly effective.  That disclaimer stated:

> Plaintiff does not assert any claim arising from a misstatement or omission in connection with the purchase or sale of a security, nor does Plaintiff allege that Defendants engaged in fraud in connection with the purchase or sale of a security.

Cpt. ¶ 5.  Defendants' assertion that this disclaimer is somehow ineffective relies on cases where the allegations in the complaint clearly contradicted the disclaimer.  For example, in *Kurz v. Fid. Mgmt. & Research, Co.,* the court found SLUSA preemption because "the basis for their state-law claims of breach of contract is undisclosed conflicts of interest and omissions of material fact by [the defendants]."  2007 U.S. Dist. LEXIS 80127, at *24 (S.D. Ill. 2008), *aff'd*, 556 F. 3d 639 (7th Cir. 2009).  Here, as already detailed, Plaintiff's claims for breach of fiduciary duty and unjust enrichment do not arise from a misstatement or omission in connection with the purchase or sale of a security.

### B.    The "In Connection With" Requirement of SLUSA Has Not Been Met.

Defendants have failed to identify even one misstatement or omission in the Complaint, so the Court need not reach the issue of whether the "in connection with the purchase or sale of a security" portion of SLUSA applies.  Defendants' reliance on *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, is therefore patently misplaced. 547 U.S. 71 (U.S. 2006).  In *Dabit*, the parties did not dispute that the complaint alleged misrepresentations and omissions of material facts. *Id*. at 84.  "The only disputed issue is whether the alleged wrongdoing was 'in connection with the purchase or sale' of securities." *Id*.  Such is clearly not the case here.  Nowhere in the Complaint is there an allegation that any shareholder invested in Calamos in reliance on an alleged material misstatement or omission.

10

In any event, even if the Complaint did allege misrepresentations or omissions, the "in connection with" requirement would not be satisfied, and SLUSA would not apply. There are two basic wrongs asserted in the complaint--that the Individual Defendants unjustifiably replaced advantageous financing with disadvantageous financing in breach of their fiduciary duties, with the assistance of the Calamos Defendants and that in doing so they enriched themselves at shareholders' expense. Neither of these actions occurred in connection with, or coincided with, the purchase or sale of any securities. Though *Dabit* extends the "in connection with" requirement to "holders" of securities, the Supreme Court still made clear that the misconduct must have occurred coincident with a security transaction. *Dabit*, 547 U.S. at 85. Such is not the case here. Class members did not purchase or sell their stake in the Fund coincident with Defendants' misconduct as alleged. *LaSala v. Bank of Cyprus Public Co. Ltd.*, 510 F. Supp. 2d 246, 273 (S.D.N.Y.2007) ("Where the alleged conduct giving rise to the claim is too far removed from a securities transaction, the 'in connection with' requirement is not met"); *See also Norman v. Salomon Smith Barney, Inc.*, 350 F. Supp. 2d 382, 388 (S.D.N.Y. 2004) ("the mere 'involvement of securities [does] not implicate the anti-fraud provisions of the securities laws.'") (internal citation omitted).

The Seventh Circuit, even after *Dabit,* recognized the importance of some connection between the alleged wrongdoing and a security transaction:

> The defendants have confused a transaction with its sequelae. After you buy a car and drive away with your new possession, much can happen to affect the value of your purchase. If what happens is traceable to something that occurred before the sale was complete, such as a defective engine block, you may be able to undo the sale on the basis that that something happened "in connection with" the sale. But if something happens after the transaction is complete to make it less worthwhile to you, such as the dealer's replacing a tire that has worn out with one that is the wrong size, it is a separate wrong, not anything connected with the original sale unless the wrong is a breach of warranty.

*Gavin v. AT&T Corp.*, 464 F.3d 634, 639 (7th Cir. 2006) (also noting that, "a mere 'but for' cause linking a securities transaction … to a subsequent injury … does not make the injury one suffered 'in connection with the purchase or sale of securities.'"). This is precisely analogous to the set of facts here. While Defendants' improper redemption of the ARPS had a negative financial impact on common stockholders, that impact did not have any connection to the stockholders' initial purchase of their stake in the Fund.

In addition, breach of fiduciary duty and unjust enrichment claims do not require the purchase or sale of a security to be viable. *See Kirschner v. Bennett*, 2010 U.S. Dist. LEXIS 132344, at *100 (S.D.N.Y. 2010) ("It is true that the primary wrong recognized as adequately pled by the Special Master is in some sense related to the [leveraged buyout]. But the claim for fraudulent inducement does not require any showing of a purchase or sale of a security. Rather, the [leveraged buyout] is simply a fact --- by the Trustee's allegation, the [leveraged buyout] rendered RCM clearly insolvent. For the fraudulent inducement claim, it does not matter how RCM became insolvent, only that it was.")

### C.    The Complaint Falls Under SLUSA's "Exclusively Derivative" Exemption.

Even if SLUSA were otherwise applicable, this case falls squarely within the "exclusively derivative" exemption to the statute because "the term covered class action does not include an exclusively derivative action brought by one or more shareholders on behalf of a corporation." 15 U.S.C. § 77p(d)(2)(f)(2)(B). Indeed, Defendants readily admit that the claims are derivative in nature. Joint Mem. at 14.

Thus, having conceded that the substance of the case falls outside of SLUSA's reach, Defendants' only quibble is that the case is "styled" as a class action. The Court should reject Defendants' attempt to elevate style over substance. The fact that a complaint is technically "styled" as a class action is largely irrelevant to whether it will be considered derivative in

nature. Courts have looked beyond the superficial characterizations of a complaint in making determinations concerning the nature of the substantive claims pursued. In the case of *In re Columbia Entities Litigation*, 2005 U.S. Dist. LEXIS 33439 (D. Mass. 2005), for example, the court concluded that claims were derivative in nature even though styled as direct class action claims, and thus applied a demand requirement to this action, reasoning that:

> if a plaintiff alleges mismanagement of funds, embezzlement or breach of fiduciary duty resulting in a diminution of the value of the corporate stock or assets, the claim is one held by the corporation itself, and is thus derivative if brought by an investor…. In contrast, if a plaintiff alleges that she, as an individual investor, was misled or defrauded in the purchase of her investment, this kind of claim is a 'direct' one.

2005 U.S. Dist. LEXIS 33439, at *15-16. *See also Hare v. Custable*, 2009 U.S. Dist. LEXIS 77653 (N.D. Ill. 2009) (Neither the Court …nor [plaintiff] is "bound by legal characterizations of the claims contained in the complaint," …Count IX [] plainly attempts to assert a shareholder's derivative claim against [defendant] for breach of fiduciary duty, and will be treated as such.); *Kennedy v. Venrock Assocs*., 348 F.3d 584, 587 (7th Cir. 2003) (Though styled as direct claims, the court found that plaintiff's claims "really are derivative claims.").

## II. **The Court Should Uphold Plaintiff's Claim for Breach of Fiduciary Duty.**

### A. **The Complaint Properly Pleads Demand Futility.**

Defendants' next attack on the Complaint is that, assuming this Court treats it as derivative in nature, it should be dismissed for failure to bring demand on the Board. Joint Mem. at 14; Fund Mem. at 2. However, under Illinois law Plaintiff is excused from making demand where such demand would be futile. *See e.g., Shirley v. JED Capital, LLC*, 724 F. Supp. 2d 904, 916 (N.D. Ill. 2010); 805 ILL. COMP. STAT. 5/7.80(b) (1999) (also referred to as § 7.80(b) of the Business Corporation Act of 1983); *see also Schnitzer v. O'Connor*, 274 Ill. App. 3d 314 (Ill. App. Ct. 1995) (stating that demand rule 7.80(b) is "almost identical" to Fed. R. Civ. P. 23.1).

Plaintiff has amply pled facts that any demand would have been futile here. That is because the Board of Trustees of the Fund (as well as other Calamos funds—Calamos Convertible Opportunities and Income Fund and Calamos Strategic Total Return Fund) had already considered, *and rejected*, another demand made on these exact allegations. These funds disclosed on July 23, 2010 that they had each received a demand letter from a law firm representing common shareholders of the three funds, alleging that Calamos Advisors LLC and the Trustees and officers of the funds breached their fiduciary duty to the funds and their respective common shareholders in connection with redemption by the funds of auction rate preferred securities in February 2008. Cpt. ¶ 42. The letters demanded that the Boards of Trustees of the Funds take certain action to remedy those alleged breaches. On October 6, 2010 Calamos announced that the Board of Trustees of each Fund had rejected the demands set forth in the demand letters. *Id*. at ¶¶ 42-43. It is therefore evident that any demand served by Plaintiff with regard to those same breaches would have been similarly rejected.[7]

**B.    The Complaint Properly Alleges That The Individual Defendants Breached Their Fiduciary Duties.**

The Complaint adequately alleges a claim for breach of fiduciary duty against the Individual Defendants. To state a claim for breach of fiduciary duty in Illinois, a plaintiff must set forth allegations, supported by facts, that a fiduciary relationship existed between the parties, that the trustee owed certain, specific duties to the plaintiff, that the trustee breached those duties, and that there were resulting damages. *Sequel Capital, LLC v. Pearson*, 2010 U.S. Dist. LEXIS

---

[7] To determine whether demand is futile under Illinois law, the Illinois courts generally apply the standard set forth by the Delaware Supreme Court in *Aronson v. Lewis*, 473 A.2d 805, 808 (Del. 1984). *In re Abbott Labs. Derivative S'Holders Litig*., 325 F.3d 795, 807 (7th Cir. 2003). However, none of the cases relying on *Aronson* involved prior refusal by the same defendants to act on demand made regarding the same claims at issue. In such a circumstance, it is clear that subsequent demand would also be futile and the *Aronson* analysis is unnecessary. However, the *Aronson* test is satisfied here nonetheless. Under *Aronson,* demand is futile if there is a reasonable doubt that the challenged transaction was a product of the directors' valid business judgment. *Id*. (internal citations omitted). As explained in Section II.C, business judgment protection is unavailable here.

104554, *20 (N.D. Ill. 2010) (internal citations omitted); *Prodromos v. Everen Secs., Inc.*, 389 Ill. App. 3d 157, 171 (Ill. App. Ct. 2009) (internal citations omitted).

Here, the Complaint alleges particularized facts, which the Court must accept as true (*See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)), demonstrating that the Individual Defendants breached their fiduciary duties by redeeming the ARPS while under no obligation to do so, and replacing the ARPS with unfavorable financing to the detriment of the common shareholders, while the preferred shareholders, and the Defendants themselves, who suffered from conflicts of interest, reaped personal benefit.

As noted, the Individual Defendants, in addition to serving as Trustees of the Fund, served in similar capacities on behalf of a large number of Sister Calamos Funds sponsored by the Calamos Sponsorship Group. Cpt. ¶ 17. The Individual Defendants stood to gain additional board seats and management fees for each new fund sponsored by Calamos. *Id.* at ¶ 19. The Individual Defendants and the Calamos Sponsorship Group managed the funds in a way that reflected their shared economic self-interests and put those interests over the distinct interests of the separate closed-end funds, even though they owed distinct fiduciary obligations to each. *Id.* at ¶ 20. As a result, the Defendants were able to collect fees from a number of funds with little or no incremental burden on their time for each fund. *Id.* This management approach also created an incentive for the Fund's directors to advance their own and the Group's interests even if those interests conflicted with the interests of the Fund's common stockholders. *Id.* The Individual Defendants redeemed the ARPS, though they were under no obligation to do so, simply to appease the investment banks and brokers who marketed the ARPS and were a key part of the business model of the Calamos Sponsorship Group. *Id.* at ¶ 26. It was imperative for the Individual Defendants to keep the investment banks and brokers happy because the Calamos

Sponsorship Group earns fees by sponsoring new funds and the investment banks and brokers market the common shares of those funds. *Id.* Consequently, the Calamos Sponsorship Group relies heavily on good relationships with the investment banks and brokers to enable them to market new funds and for the Individual Defendants to earn fees for the management of those funds. *Id.* Toward that end, the Individual Defendants breached their fiduciary duties to the Fund and its shareholders by redeeming the ARPS to keep the investment banks and brokers happy and their own pockets well-lined with sizable fees.

In response to these allegations, Defendants first attempt to claim that they had no fiduciary duties to Plaintiffs in the first place. Fund Mem. at 4-7. This assertion is disingenuous. It is clear under Illinois law that "a trustee owes a fiduciary duty to a trust's beneficiaries and is obligated to carry out the trust according to its terms and to act with the highest degrees of fidelity and utmost good faith." *Sequel Capital*, 2010 U.S. Dist. LEXIS 104554, at *25-26 (internal citations omitted); *Janowiak v. Tiesi*, 402 Ill. App. 3d 997, 1006 (Ill. App. Ct. 1st Dist. 2010) (under the Fiduciary Obligations Act, 760 ILL. COMP. STAT. 65/1(1), a "fiduciary" includes a trustee under any trust). "The fiduciary obligation of loyalty flows *not from the trust instrument* but from the relationship of trustee and beneficiary, and the essence of this relationship is that the trustee is charged with equitable duties toward the beneficiary." *Sequel Capital*, 2010 U.S. Dist. LEXIS 104554, at *25-26. (Emphasis supplied). Thus, contrary to the Individual Defendants' assertions, neither the Delaware Statutory Trust Act ("Delaware Act") nor the Amended and Restated Agreement and Declaration of Trust ("Declaration") could, or do, serve to eradicate their fiduciary duties.

Delaware law provides only that the governing instrument of a trust (here the Declaration) can limit or eliminate liability for breach of fiduciary duty *unless the act or*

16

omission constitutes "*a bad faith violation of the implied contractual covenant of good faith and fair dealing.*" DEL. CODE ANN. Tit. 12, § 3806(e). This provision does not address the existence of the duty, but rather, liability for breaching that duty.

The relevant provisions of the Declaration do not warrant a different result.[8] Contrary to Defendants' mischaracterizations, the Declaration does not disclaim the existence of a fiduciary duty. The Declaration simply states that the Trustees do not hold duties to the extent they are "*inconsistent* with the limitations of liabilities or authorities and powers of the Trustees set forth or referenced in this Declaration." Fund Mem. at 6. (Emphasis supplied). The Declaration then provides that directors' liability will be limited to instances of "willful, misfeasance, bad faith, gross negligence, or reckless disregard of the[ir] duties...." Defendants eventually concede that they are exposed to liability for these types of acts. Fund Mem. at 7. The allegations of the Complaint clearly demonstrate that the Individual Defendants acted in bad faith in redeeming the ARPS with improper motives at a time when they were not required to do so, and failing to replace the ARPS with financing that was at least as advantageous.

Nor does the exculpatory language in the Declaration serve to excuse Defendants' actions in any way because that provision is only triggered "[p]rovided they have exercised reasonable care and have acted under the reasonable belief that their actions are in the best interest of the Trust." The Complaint alleges the opposite—that the Individual Defendants did <u>not</u> exercise reasonable care in the course of their duties as Trustees of the Fund and fiduciaries of the Fund Shareholders.

---

[8] The claim for breach of fiduciary duty asserted in the Complaint does not conflict with the Trustee's power "[t]o borrow money;" "[t]o. . . redeem. . . Shares;" "to establish terms and conditions regarding . . . redemption . . . of . . . Shares;" and "to apply to any such...redemption...of Shares any funds or property of the Trust...." Fund Mem. at 7. The Complaint does not assert that the Trustees were prohibited from taking these actions but rather that they were prohibited from taking these or any other actions that unjustifiably served as a detriment to the Fund and its shareholders, while yielding a pecuniary gain for the Defendants.

### C.      The Business Judgment Rule Does Not Protect The Fund Defendants.

The Illinois business judgment rule "is a presumption that directors of a corporation make business decisions on an informed basis, in good faith, and with the honest belief that the course taken was in the best interest of the corporation." *Ferris Elevator Co., Inc. v. Neffco, Inc.,* 285 Ill. App. 3d 350, 354 (Ill. App. Ct. 3d Dist. 1996); *see also Stamp v. Touche Ross & Co.,* 636 N.E.2d 616, 621 (Ill. App. Ct. 1st Dist. 1993). The rule "applies to protect directors who have performed diligently and carefully and have not acted fraudulently, illegally, or otherwise in bad faith." *Treco, Inc. v. Land of Lincoln Sav. and Loan,* 749 F.2d 374, 377 (7th Cir. 1984). The rule does not shield "directors who fail to exercise due care in their management of the corporation." *Stamp,* 636 N.E.2d at 621. Illinois courts have held that the issue of whether a decision was reasonable under the business judgment rule, and not a breach of fiduciary duty, is a factual issue for the jury that is inappropriate for resolution at the motion to dismiss stage.   *See Baron v. Chrans,* 2008 U.S. Dist. LEXIS 56727, at *69 (C.D. Ill. 2008).   At the pleading stage, however, a plaintiff can overcome the business judgment rule for a particular transaction by alleging facts showing "that a majority of a board that approved the transaction in dispute was interested and/or lacked independence." *Seidel v. Byron*, 405 B.R. 277, 290 (N.D. Ill. 2009) (citing *Orman v. Cullman*, 794 A.2d 5, 23 (Del. Ch. 2002)). A director is interested when appearing on both sides of a transaction or when deriving a personal benefit from a transaction that is not received by stockholders generally. *Id.* (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984); *Orman*, 794 A.2d at 23).[9] "Independence means that a director's decision is based on the

---

[9] In evaluating plaintiff's allegations, even after *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), courts must still approach motions under Rule 12(b)(6) by "constru[ing] the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F. 3d 1074, 1081 (7th Cir. 2008).  Moreover, the allegations must only show that a claim is plausible; there is no "probability requirement." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

corporate merits of the subject before the board rather than extraneous considerations or influences." *Id.*

Here, the Complaint alleges ample facts showing that Defendants were motivated more by their own self-interest and improper motives rather than by the "corporate merit" of redeeming the ARPS, and therefore lacked the independence necessary to invoke business judgment rule protection. For example, the Complaint alleges that Defendants derived pecuniary benefit from the redemption of the ARPS, while the Fund was left with far less advantageous financing. Cpt. ¶¶ 3, 25-34. The Defendants also derived personal benefit in the form of improved relationships with the investment banks that they relied on so heavily to distribute new funds and thereby collect substantial additional management fees. *Id.* at ¶ 26.

Moreover, the Complaint alleges facts surrounding the redemption that highly suggest that their motivations were not in good faith. Specifically, it is undisputed that Defendants were under no legal obligation to redeem the ARPS in the first place. Cpt. ¶ 24. Moreover, it is also undisputed that the "replacement" financing was on far less favorable terms than the ARPS. Id. ¶ 29-34. Defendants' briefs offer no explanation whatsoever about why they discarded such an advantageous form of financing, to the detriment of the Fund and its shareholders, though not required to do so. Adding insult to injury, Defendants cashed out the ARPS holders at *above market value* in a market that was frozen. The Fund Defendants disingenuously argue in a footnote that "the ARPS could not be redeemed *except* at their liquidation preference." Fund Mem. at 9 n.9. This argument is premature on a motion to dismiss. Defendants have yet to provide any credible reason for choosing to redeem the ARPS above market value that contradicts the Complaint's allegations of improper motive and bad faith.

The Complaint therefore adequately states a claim for breach of fiduciary duty against the Individual Defendants.

## III.    The Complaint Sufficiently Alleges That The Calamos Defendants Aided And Abetted The Individual Defendants' Breach of Fiduciary Duties.

The Complaint also pleads sufficient facts demonstrating that the Calamos Defendants aided and abetted breaches of fiduciary duty.  Under Illinois law, to state a claim for aiding and abetting, one must allege (1) the party whom the defendant aided performed a wrongful act causing an injury, (2) the defendant was aware of his role when he provided the assistance, and (3) the defendant knowingly and substantially assisted the violation. *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006) (citing *Thornwood, Inc. v. Jenner & Block*, 799 N.E.2d 756, 767 (Ill. App. 2003).)  Plaintiff is required to provide only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Prestwick Capital Mgmt. Ltd. v. Peregrine Fin. Group, Inc*., 2010 U.S. Dist. LEXIS 120148, at *18-19 (N.D. Ill. 2010) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Complaint here complies with this standard.

As explained in Section II, the Individual Defendants breached their fiduciary duties by redeeming the ARPS unnecessarily, replacing the ARPS with less advantageous financing, and reaping pecuniary benefit at the expense of shareholders.  The Calamos Defendants were all uniquely situated in their role as investment adviser or through contractual relationships and extensive communications with the Individual Defendants, to know that the Individual Defendants were fiduciaries to the Plaintiff and the Class and had duties to act in the Class' best interests.  Cpt. ¶ 51.  It was common knowledge that the auction rate securities markets were failing and it was also common knowledge to all the Defendants that there was no obligation to

20

redeem the ARPS and that doing so would in fact disadvantage common shareholders. The Calamos Defendants aided and abetted the Individual Defendants' breaches of their fiduciary duties by encouraging and sanctioning the Individual Defendants' misconduct as alleged in the Complaint. Cpt. ¶ 52.

Contrary to the Calamos Defendants' claims (*see* Calamos Mem. at 6-7), the Complaint does sufficient allege an injury flowing from this misconduct. For example, Plaintiff and other Fund shareholders lost the advantages the ARPS provided and suffered financial loss as a result of the inferior terms of the replacement financing. Specifically, the common shareholders' dividends were reduced because funds that would otherwise have been available to pay such dividends were instead diverted to pay the increased costs associated with the replacement financing for the ARPS. Cpt. ¶ 35. Further, the Fund's overall leverage was reduced, thereby producing less cash flow available to pay common stock dividends. In addition, the overall value of the Fund's common shares is lower than it would have been if the ARPS had not been redeemed. *Id.* Defendants' claim that the alleged injury is too "hypothetical" because dividends were discretionary in nature, misses the point. Defendants' actions reduced the pool of money available to pay the dividends.

## IV.     The Complaint Adequately States A Claim For Unjust Enrichment.

To state a claim for unjust enrichment under Illinois law, a plaintiff must allege that "the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Gantchev v. Predicto Mobile, LLC*, 2009 U.S. Dist. LEXIS 85898, at *10 (N.D. Ill. 2009) (internal citation omitted). Defendants' retention of a benefit is unjust if they procured the benefit through wrongful conduct. *Kopecky v. RJM Invs.*, 2009 U.S. Dist. LEXIS 76009, *7 (N.D. Ill. 2009). Here, the Complaint alleges that the Calamos Defendants aided and abetted the

21

breach of fiduciary duty. Cpt. ¶¶ 5-54. Further, the Complaint alleges that the Calamos Defendants received substantial fees from the Fund and from other Calamos Sister Funds. None of these benefits would have inured to the Calamos Defendants absent their wrongful conduct.

## V.    CONCLUSION

For the reasons discussed above, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss.

Dated:  April 1, 2011

**POMERANTZ HAUDEK**
**  GROSSMAN & GROSS, LLP**

/s/ Patrick V. Dahlstrom
Patrick V. Dahlstrom
One North LaSalle Street, Suite 2225
Chicago, Illinois 60602
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
pdahlstrom@pomlaw.com

Marc I. Gross
Murielle J. Steven
Jeremy A. Lieberman
Tamar A. Weinrib
**POMERANTZ HAUDEK**
**  GROSSMAN & GROSS, LLP**
100 Park Avenue, 26th Floor
New York, New York  10017-5516
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
migross@pomlaw.com
mjsteven@pomlaw.com
jalieberman@pomlaw.com
taweinrib@pomlaw.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I, Patrick V. Dahlstrom, hereby certify that on April 1, 2011, I caused to be filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record in this matter who are registered with the Court's ECF filing system.

/s/ Patrick V. Dahlstrom